## HOLLAND et al. v. BLANCHARD et al.
### (No. 9091.)

(Court of Civil Appeals of Texas. Dallas. March 29, 1924. Rehearing Denied May 3, 1924.)

**1. Trial ⬡139(1)—Instructed verdict authorized where evidence is all one way or so conclusive reasonable minds could not differ as to effect.**

If evidence is all one way or so conclusive that reasonable minds could not differ as to its effect, instructed verdict is authorized; evidence which may create surmise or suspicion not requiring submission of issue to jury.

**2. Names ⬡14—Similarity of names only prima facie evidence of identity.**

Similarity of names is never more than prima facie evidence of identity.

**3. Estoppel ⬡30—Parties claiming under deed bound by recitals.**

Parties claiming under deed are bound by its recitals as to name and residence of grantee.

**4. Deeds ⬡31—Purpose of requirement that city, county, and state of parties' residence be stated.**

Provision of Rev. St. art. 1107, that deed state town or city, county, and state of grantor's and grantee's residence, was made as means of determining identity in view of similarity of names of many people.

**5. Deeds ⬡110—Instructed verdict on issue as to identity of grantee held proper.**

In trespass to try title, instructed verdict for plaintiffs on issue as to identity of grantee in deed under which all parties claimed *held* proper.

**6. Estoppel ⬡119—Instructed verdict on issue of estoppel to assert title held proper.**

In trespass to try title instructed verdict for plaintiffs on issue of estoppel to assert title *held* proper.

**7. Estoppel ⬡95—Mere silence or failure to assert title to land insufficient.**

Silence or failure to assert' title to land adversely claimed, conveyed, or occupied does not create estoppel, unless opportunity to speak was afforded, with full knowledge of facts, and adverse party was ignorant of truth and misled into doing what he would not otherwise have done.

**8. Estoppel ⬡52—Necessary elements stated.**

To be estopped, one must have known facts or been guilty of negligence in not knowing them, and adverse party must have relied on, and acted on the faith of what former said, did or omitted.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Estoppel.]

**9. Estoppel ⬡54—Absence of convenient and available means of learning truth essential.**

To urge defense of estoppel in pais, defendant must have been, not only ignorant of truth, but destitute of any convenient and

available means of acquiring knowledge thereof.

**10. Estoppel ⬡95—Grantee properly recording deed not bound to speak on learning of conveyance by another of same name.**

Grantee recording deed in county where land is situated, as required by statute, *held* not bound to speak otherwise on learning that person of same name had conveyed land and that others were claiming it under such conveyance.

**11. Forgery ⬡8—Deed by one of same name as owner is forgery.**

A deed by one of same name as owner is a forgery.

**12. Estoppel ⬡95—Owner of land adversely occupied by grantees under forged deed from another may remain inactive without prejudicing rights for less than statutory period.**

Owner of, land adversely occupied, use, and claimed by grantees under deed from another of same name may remain inactive, with full knowledge of facts, without prejudicing rights for any period, short of that prescribed in statutes of limitation.

**13. Estoppel ⬡95—One knowingly spending money on another's lands without owner's consent acts at peril, and cannot plead estoppel by mere silence.**

One willfully spending money on another's lands without obtaining or asking owner's consent, though perfectly acquainted with other's rights or having means of becoming so, acts at his peril, and cannot plead estoppel by mere silence.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Action by Annie E. Blanchard and others against E. N. Holland and others. Judgment for plaintiffs, and named defendant appeals. Affirmed.

Geo. T. Burgess, of Dallas, for appellant.
Geo. A. Titterington, of Dallas, for appellees.

LOONEY, J. This is an action of trespass to try title by appellees against E. N. Holland et al. to recover certain lots situated in Oak Lawn addition to the city of Dallas. The trial was before a jury and resulted in an instructed verdict and judgment accordingly in favor of appellees. E. N. Holland alone appeals. Holland pleaded in the court below not guilty, improvements in good faith, and estoppel. The right of appellant to recover the value of improvements in good faith was not contested by appellees and in this respect the judgment of the court below fully protects him.

The only material question presented on this appeal arises on the plea of estoppel urged by appellant, which is substantially as follows:

That the lot in question, being lot No. 10 in block No. 5, Oak Lawn addition, was by a deed dated December 29, 1898, recorded in

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Dallas county deed records on March 3, 1899, conveyed to Sarah J. Prouty, of the state of New York, by the Building & Loan Association of Dakota; was by a deed dated August 25, 1906. conveyed by Sarah J. Bradley (formerly Sarah J. Prouty) joined by her husband, F. M. Bradley, to J. A. Brooks, consideration $450, cash, recorded in Dallas county deed records on August 30, 1906; was on April 11, 1907, conveyed by J. A. Brooks to Ras Hackett, consideration $800, cash, deed recorded in Dallas county deed records on April 16. 1907; was on January 1, 1908, conveyed by Ras Hackett and wife to L. V. Duncan. consideration $1,250. deed recorded in Dallas county deed records on January 2, 1908; was on August 18, 1915, conveyed by L. V. Duncan to Paul G. Meyer, consideration $1,000, deed recorded in Dallas county deed records September 10, 1915, and. on November 13, 1915, Paul G. Meyer conveyed the land to R. E. Wiley, consideration $1,000, deed recorded in Dallas county deed records on November 22, 1915; was on November 29, 1915. by R. E. Wiley conveyed to E. W Ware, consideration $1,060. deed recorded in Dallas county deed records on November 29, 1915; and was on February 7, 1917, conveyed by E. W. Ware to Jasper Collins, consideration $1,100, deed recorded in Dallas county deed records April 24. 1917; and was on April 25, 1917, conveyed by Jasper Collins and wife to Stevie Selby, consideration $1,350. deed recorded in Dallas county deed records on April 26, 1917, and on June 10, 1918. Stevie (Selby) Watson and her husband, V. S. Watson. conveyed the lot to the appellant E. N Holland, consideration $4,250, deed recorded in Dallas county deed records on June 10, 1918.

That the consideration expressed in each of the deeds was in truth and in fact paid and that at the time of the purchase of the lot by Stevie Selby the same was vacant and abutted upon an unpaved street, and believing that by the deeds hereinbefore mentioned she was vested with the full fee-simple title to the lot, and that the Sarah J. Prouty to whom said lot was conveyed was the Sarah J. Prouty Bradley, who, joined by her husband, F. M. Bradley, conveyed the lot to J. A. Brooks, she bought the lot from Jasper Collins for $1,350 and erected a house and other improvements at a cost of $4,300, and that appellant Holland, relying upon the record title to said lot, and believing that the Sarah J Prouty who conveyed to Brooks was the Sarah J. Prouty to whom the same was conveyed, purchased the lot from Mrs. Watson for $4,250.

Appellant further alleged that if the Sarah J. Prouty, the ancestress of plaintiffs, was the grantee in the deed from the Building & Loan Association of Dakota, and, if she ever owned said lot, that she died on or about the 27th day of November, 1911, more than five years after the execution and de-livery of the deed of Sarah J. Prouty Bradley to J. A. Brooks, and that she knew that one Sarah J. Prouty had conveyed the lot and that the deed was recorded in Dallas county, and that parties were claiming the lot by reason of such conveyance, believing that the Sarah J. Prouty to whom the lot had been conveyed by the Building & Loan Association and the Sarah J. Prouty who conveyed to J A. Brooks were one and the same person, and that others would deal with said lot upon the faith of the records of Dallas county, Tex., and that the said Sarah J. Prouty, the ancestress of appellees, paid no taxes on the lot, exercised no acts of ownership over it, and took no steps to vacate or set aside the deed executed by Sarah J. Prouty Bradley or to advise the parties relying upon the faith of said deed that the said Sarah J. Prouty who owned the lot did not convey the same, but induced the appellant and his grantors to purchase said lot and make valuable improvements thereon; that appellant and his grantors, relying upon the fact that the Sarah J. Prouty who conveyed the lot was the Sarah J. Prouty to whom the same had been conveyed, purchased the same and paid enhanced value for the lot, as shown by the considerations mentioned in the respective deeds, wherefore appellant pleads that appellees are estopped from now asserting title to the lot.

The material facts are substantially as follows:

The common source of title is the Building & Loan Association of Dakota. The deeds of conveyance hereinbefore set out, in connection with the plea of estoppel, bear the dates and were executed for the considerations, and were duly filed and recorded in the deed records of Dallas county as hereinbefore recited. It was agreed that the grantees in the chain of title that originated in the deed executed by Mrs. Sarah J. (Prouty) Bradley and her husband to J. A. Brooks, down to and including the appellant Holland, paid valuable considerations for the lot in question, and that each purchased in good faith. The appellees herein are the heirs and legatees of Mrs. Sarah Jane Prouty, of Watertown, N. Y., and succeeded to whatever right, title, or interest their ancestress had or owned in the lot at the time of her death. Mrs. Prouty of Watertown, N. Y., died November 27, 1911, and Geo. H. Walker was executor of her will, and served in that capacity until discharged some time in the year 1916.

Neither Mrs. Prouty nor Walker, her executor, nor appellees, her heirs and legatees, paid any taxes on the lot in question, nor did Walker, as executor, schedule the lot as a part of the property belonging to her estate. The appellant and those under whom he claims have paid all taxes due and assessed against the lot in question.

The Sarah J. Bradley, formerly Sarah J.

Prouty, who, joined by her husband, F. M. Bradley, on August 25, 1906, conveyed the lot of land in controversy to J. A. Brooks, never resided at any time at Watertown, state of New York. She was married three times: First, to a man by the name of Cox, in the state of Georgia; second, to a man by the name of Prouty, in Greenville, Tex., the date not shown; and, third, to F. M. Bradley, in the city of New Orleans, La. In 1871 or 1872, Mrs. Cox, as she bore that name at that time, resided in the city of Dallas. Subsequently she married Prouty, but their married life did not extend over a very long period. She married Bradley about 1903 and resided at Mobile, Ala., until Bradley died in 1911, since which time she has resided part of the time in the city of Dallas and part of the time in the state of Alabama.

The purchasers of the lot of land in question—J. A. Brooks, L. V. Duncan, Paul G. Meyer, R. V. Wiley, E. W. Ware, Jasper Collins, Mrs. Stevie (Selby) Watson, and appellant E. N. Holland—each testified in substance that the lot of land was purchased in good faith, each believing that a good title was being conveyed, did not know and had never heard of a Sarah J. Prouty of New York owning or claiming the property or any interest therein, had not heard and did not know of her heirs making claim to the lot, and possessed no information that Sarah J. Prouty Bradley, who conveyed the property to J. A. Brooks, was not the Sarah J. Prouty in whom the record title stood.

In addition to the facts just recited, the following evidence is also given relating to the identity of the Sarah J. Prouty to whom the Building & Loan Association of Dakota conveyed the land as hereinbefore stated.

The said deed from the Building & Loan Association conveying the lot in question contains the following, among other, language:

"This indenture made the twenty-ninth day of December in the year of our Lord, one thousand eight hundred and ninety-eight, by and between the Building & Loan Association of Dakota (a corporation), of the county of Brown in the state of South Dakota, party of the first part, and Sarah J. Prouty, of the county of ———, in the state of New York, party of the second part, witnesseth," etc.

C. F. Eastern, who was formerly secretary of the Building & Loan Association of Dakota, testified that he knew the facts that resulted in making the deed to Mrs. Prouty; that she was a stockholder and creditor of the association, and that her claim was settled in full; that the deed was delivered to Mrs. Prouty by mailing it to her at her then known address, thinks she resided at Watertown, N. Y.

C. W. Starling, an attorney of Dallas, testified that during the years 1897 and 1898 he was attorney at Dallas for Building & Loan Association of Dakota, and was its agent during these years; that he received the deed in question, either from the Building & Loan Association of Dakota or from the grantee, and was instructed to have it recorded and mailed to Mrs. Sarah Jane Prouty at some place in New York, think it was Watertown; that he had the deed recorded, received it from the county clerk and forwarded same to Mrs. Prouty, and also furnished her an opinion on the property; that he did not know of or deal with any person by the name of Sarah J. Bradley in connection with the transaction. The county clerk's certificate shows that after the deed was recorded it was delivered to C. W. Starling.

Geo. H. Walker, of Watertown, N. Y., testified that he had known Sarah J. Prouty since 1892; that on December 28, 1898, she resided at Watertown, N. Y.; that she died November 27, 1911, and that he was executor of her will up to the year 1916; that he had previously had in his hands the deed from the Building & Loan Association of Dakota to Sarah J. Prouty, that his recollection was that the deed was sent to Mrs. Prouty by Mr. Eastern, secretary of the association; that witness saw the deed at the house of Mrs. Prouty in Watertown and it was soon after Mrs. Prouty received the same. Witness was administrator of the estate of the husband of Mrs. Prouty, who was a stockholder in the Building & Loan Association of Dakota, and Mrs. Prouty succeeded to the ownership of the stock at her husband's death, and, in this way, she acquired the lots of land in question.

Judge Seay, of Dallas, testified that about 1872 he became acquainted with Sarah Jane Prouty, who then resided in Dallas; that her name was Mrs. Fox (Cox) most of the time that he knew her; that she was not married to Prouty very long before she married Bradley. She wrote witness from Mobile, Alabama, in regard to the lots in Oak Lawn and asked him "whether she should sign a deed to them"; that she married Bradley two or three years before she executed the deed to Brooks (1906). Witness came to Dallas in 1871, and Mrs. Prouty lived in Dallas from that time up to the time she married Bradley, which was about 1903; that he represented her all the time she resided at Dallas, was a special friend of hers; never heard of the Building & Loan Association of Dakota in connection with any deed of hers, and never heard of said deed; that John Prouty, her husband, never owned any stock in said Building & Loan Association.

Mrs. Alice Trammell, 49 years of age, daughter of Mrs. Sarah J. Bradley, testified that she had resided in Dallas 30 years; that after her mother married Bradley they resided at Mobile, Ala., until Bradley's death in 1911, since which time her mother has resided in Dallas part of the time and part of the time in Alabama; that in 1898 they either resided at Greenville, Tex., or in Dallas;

that Sarah J. Prouty never at any time resided in the state of New York, nor in Watertown, N. Y., and witness never knew a Sarah J. Prouty who resided in Watertown, N. Y., and never heard of her before; that she never knew of her mother being a creditor of the Building & Loan Association of Dakota; that her mother wrote her from Mobile, Ala., mentioning the fact that some party wanted her (the mother) to make a quitclaim deed to the lot in controversy; that her mother wrote that she did not claim to own the property and did not know anything about it, and asked witness to inquire into the matter, which witness did. and that her mother wrote her that she had finally decided to make a quitclaim deed; that her mother told her she had no right to or interest in the property unless her husband, Mr. Prouty, had bought the same at some time but if he had she did not know it. The witness said; "I know that my mother did not claim to own the property."

The deed from F. M. Bradley and wife to J. A. Brooks contains the following among other recitals:

"Know all men by these presents, that we, F. M. Bradley and wife, Sarah J. Bradley (formerly Sarah J. Prouty), of the county of Mobile, state of Alabama, for and in consideration of the sum of four hundred and fifty ($450.00) dollars to us cash in hand paid by J. A. Brooks," etc.

In addition to the facts hereinbefore stated, the record contains the following:

Geo. Walker, executor of the will of Mrs. Prouty, of Watertown, N. Y., testified that he had a conversation with Mrs. Sarah Jane Prouty at her home in the city of Watertown, N. Y., about February, 1904, in regard to the lots of land in question, and discussed the matter with her several times subsequent to that date; that Mrs. Prouty was opposed to giving these lots any attention; she did not believe they were of great value, and, having a large estate, did not pay any attention to them and would not employ any one in Texas to look after them. For 20 years prior to her death, Mrs. Prouty advised with witness concerning her investments, and he had a very good knowledge of the property she owned and claimed; that she knew that a Mrs. Sarah J. Prouty had made a deed conveying these lots; she knew this fact five or six years prior to her death. Witness did not list these Dallas lots on the inventory of Mrs. Prouty's estate; because he knew that a Sarah J. Prouty had conveyed the same, and, as executor, he did not pay taxes on them. He knew at the time of the death of Mrs. Prouty that a Sarah J. Prouty had conveyed the lots and that others were claiming them; could not say how often Mrs. Prouty discussed with him the fact that the lots had been conveyed by a Sarah J. Prouty, nor how shortly preceding her death was the last such

conversation, but probably several years. Witness further stated that it was a fact that Mrs. Prouty for some time before her death knew that the lots had been conveyed by a Sarah J. Prouty, and that others were claiming the lots under such conveyance. Witness had an investigation made as to the title to the lots, cannot say whether it was before or after her death; think the report of the investigation showed a conveyance by Sarah J. Bradley, described as Sarah J. Prouty; cannot recall the date when he first knew that some one claiming to be Sarah Jane Prouty had made a conveyance of the lots, nor how he acquired the. information, but he knew that Mrs. Prouty discussed the matter with him. In another connection witness said the reason the Dallas lots were not included in the inventory as a part of the property of the estate of Mrs. Prouty was because witness knew of the refusal of Mrs. Prouty to institute any action for the recovery of the lots, and because witness knew that some one claiming to be Sarah Jane Prouty had made a conveyance of the same prior to the death of Mrs. Prouty.

The above and foregoing is the substance of the facts established by the evidence, and, in view of the instructed verdict, which is either justified or not, according to the testimony, we have set out somewhat at length the evidence adduced on the issues of identity and estoppel.

Appellant presents for our consideration a number of assignments, all of which have received our consideration; but, as we view the case, all questions presented are in substance included within and may be properly determined from a consideration of appellant's propositions Nos. 1 and 2, as follows:

### "First Proposition.

"The court erred in directing a verdict for the plaintiffs as against the defendant Holland and in refusing defendant's motion for an instructed verdict in his favor, because, as a matter of law, under the uncontradicted evidence, the ancestor of plaintiff—Sarah J. Prouty—and plaintiffs were estopped from asserting title to the lot as against appellant."

### "Second Proposition.

"When Mrs. Watson began the erection of the improvements on the lot, the possession of Mrs. Watson was notice to appellees of her title thereto and of the fact that she believed that the Sarah J. Prouty who conveyed the lot was the Sarah Prouty to whom the lot had been conveyed, and appellees, having stood by and allowed her to erect said improvements, were estopped to assert title to the lot against Mrs. Watson and her vendee."

[1] The rule of law in regard to instructed verdicts is that, if the evidence is all one way or so conclusive that reasonable minds could not differ as to its effect, an instructed verdict is authorized. Evidence which may cre-

ate a surmise or suspicion does not require the submission of an issue to the jury.

This rule was announced by Judge Finley in Scripture v. Scottish, etc., 20 Tex. Civ. App. 155, 49 S. W. 645, in the following language:

"Evidence which is merely sufficient to create a surmise or suspicion upon a particular issue raised by the pleadings does not require the submission of the issue to the jury. In the case of Ivey v. Bondies (Tex. Civ. App.) 44 S. W. 916, we held that the evidence, as a whole, was of such conclusive nature that the court was justified in instructing a verdict. There was some evidence in that case which tended to support the defense of a parole sale of the land, but it was· so thoroughly. neutralized by other evidence * * * that we held the evidence conclusive as to the title of plaintiffs. The correctness of our holding upon that point was presented to the Supreme Court upon ·application for writ of error, and such application was refused. It seems now to be the settled rule that, if the evidence is so decidedly of one tendency as to leave no substantial basis upon which reasonable minds may differ as to the ultimate conclusion to be drawn from the evidence, the decision of the matter is for the judge, not for the jury."

On the issue as to whether the person to whom the Building & Loan Association of Dakota conveyed the land in controversy was Sarah J. Prouty, of New York, or Sarah J. Prouty Bradley, of Dallas, the evidence, in our opinion, leaves no doubt that the Sarah Jane Prouty, of Watertown, N. Y., was the person.

[2] Similarity of names is never more than prima facie evidence of identity (6 Encl. of Evidence, 916), as stated by our Supreme Court. "Similarity of name is said to be some evidence of identity." Chamblee v. Tarbox, 27 Tex. 144, 147, 84 Am. Dec. 614.

[3] Both parties, appellant and appellees, claim under the deed executed by Building & Loan Association of Dakota to Sarah J. Prouty, dated December· 29, 1898, and are bound by its recitals. Willis v. Gay, 48 Tex. 469, 26 Am. Rep. 328. In this deed it is recited that the grantee, Sarah J. Prouty, resided in the county of ——, state of New York.

[4] The law of this state (article 1107, Revised Statutes) provides that all deeds of conveyance shall state the residence, that is to say, the town or city, county, and state of both grantor and grantee. This is not an idle provision of the law, but was made, in view of the similarity of the names of so many people. as a means of determining identity.

Jones on the Law of Real Property, vol. 1, § 213, states the purpose of such recitals as follows:

"A description of a party to a deed by name, residence and occupation only furnishes the means of identification. That is all that any description can do. It does not in itself identify the party. It affords a presumption, which is ordinarily all that ·is required."

[5] It is our opinion, therefore, that the prima facie evidence resulting from the similarity of names, and the other vague and inconclusive circumstances connected with the residence of Mrs. Bradley at Dallas at the time of the conveyance and her subsequent correspondence with Judge Seay in regard to the lot, even if regarded as "some evidence of identity," were so thoroughly and overwhelmingly neutralized by the positive, indisputable evidence that the Sarah J. Prouty, of Watertown, N. Y., was the person to whom the land was conveyed by the Building & Loan Association of Dakota, that it cannot be said that reasonable minds can differ as. to the effect of the evidence, and, as to this issue, there was no error committed by the trial court in instructing a verdict for appellees.

[6] This brings us to the question of estoppel. Did the court commit an error in instructing a verdict in view of the evidence on this issue? We think not, and will give our reasons for this conclusion.

Appellant insists that as Mrs. Prouty (of New York) knew that a Mrs. Prouty of Dallas had conveyed the land to another, and that others were claiming the land under this conveyance, and, in view of her disinclination to bring suit for the property or to assert her claim, and the failure of herself, her executor and her heirs, the appellees, to pay taxes on the property, and the failure of the executor to list the property as part of her estate, and, further, that appellees stood by and allowed valuable improvements to be erected, that by reason of these facts appellees are now estopped to assert title to the lot in question.

[7] Silence or failure to assert title to land, while it is being adversely claimed, conveyed, or occupied, is not of itself sufficient to create an estoppel. The circumstances must show that an opportunity to speak was afforded with a full knowledge of the facts; and it must further appear that the adverse party, that is the party claiming the benefit of the estoppel, was ignorant of the truth and was misled into doing that which he would not have done but for such silence and standing by of the party sought to be enjoined. 21 C. J. 1150, 1151.

The law is further stated in 21 C. J. 1156, as follows:

"One who owns land and is either in possession of it or holds it by a registered deed is under no obligation to give notice of his title to one who proposes to purchase from another. So, in accordance with the general rules governing estoppel in pais, it is essential that the party setting up the estoppel should have relied on the conduct of the party against whom the estoppel is claimed and that by reason thereof he was induced to purchase or take a mortgage on the land."

[8] To work an estoppel, the person estopped must have known the facts or been guilty of negligence in not knowing them, and

the persons in whose behalf the doctrine is invoked must have relied on and acted on the faith of what the former said or did or omitted. Welsh v. Cooley, 44 Minn. 446, 46 N. W. 908; Stevens v. Ludlum, 46 Minn. 160, 48 N. W. 771, 13 L. R. A. 271, and notes, 24 Am. St. Rep. 210.

Did the appellant or either of his grantors know of or rely upon the fact that Mrs. Prouty declined to assert her claim to the lots, or that the executor omitted the same from the inventory of her estate? The record will be searched in vain for any evidence showing that appellant or either of the other grantees in his chain of title ever knew that Mrs. Prouty declined to assert her claim to the property, or that the same was not inventoried as a part of her estate; hence these unknown facts could not have misled or caused either of them to do anything they would not otherwise have done.

[9] To successfully urge the defense of estoppel in pais, the party relying on the defense must not only be ignorant of the truth, but must have been destitute of any convenient and available means of acquiring a knowledge of the truth.

In the case of Sheffield Car Co. v. Constantine Hydraulic Co., reported in 171 Mich. 423, 137 N. W. 305, Ann. Cas. 1914B, 994, 995, the court said:

"It may be stated as a general rule that it is essential to the application of the principle of equitable estoppel that the party claiming to have been influenced by the conduct or declarations of another, to his injury, was himself not only destitute of knowledge of the state of the facts, but was also destitute of any convenient and available means of acquiring such knowledge; and that, where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel."

There is no pretense that appellant or either of the grantees in his chain of title ever instituted any inquiry to ascertain whether the Sarah J. Prouty Bradley was the person to whom the lots were conveyed by the Building & Loan Association of Dakota. It is to be presumed that if they, or either of them, had instituted such an inquiry before purchasing the lot, the truth in regard to this matter would have been ascertained.

Mrs. Trammell, a daughter of Mrs. Bradley and a resident of the city of Dallas for 30 years, testified that her mother was never a resident of Watertown, N. Y., never claimed to own the lot in question, knew nothing about the property, and had no interest in the same unless perhaps her husband, John Prouty, had bought the lot, of which she had no knowledge; and she further testified that her mother was never a creditor of the Building & Loan Association of Dakota so far as she had any knowledge.

It is to be presumed that if inquiry had been made of Mrs. Bradley or Mrs. Trammell by appellant, or either of the grantees in the chain of title, that the same information would have been ascertained in regard to the ownership of this property as was stated by Mrs. Trammell in her testimony.

We are of the opinion that appellant and his grantors failed to exercise reasonable prudence before purchasing to ascertain the identity of the owner of the lot in question; that an abundance of means were available to them; and that if they had exercised reasonable diligence they would have ascertained the truth in regard to the ownership of these lots.

[10] It is insisted that the testatrix of appellees should have spoken when she knew that a person of her own name had conveyed the land and that others were claiming the property under the conveyance. Spoken how? She had spoken in the only way she was required to speak in such a situation; that is, she had her deed placed of record in the county where the land is situated. By complying with the provisions of the statute in this respect, she used the only practical and effectual means of giving notice of her title.

[11, 12] There is nothing in this case, barring the fact that the Bradley deed is in law a forgery. West v. Houston Oil Co., 56 Tex. Civ. App. 341, 120 S. W. 234 (col. 2), different in any material respect from any case where limitation, either of 3 or 5 years, is pleaded, and adverse possession under a deed, or deeds, duly recorded with payment of taxes is proven. The owner whose land is thus adversely occupied, used, and claimed, and whose title is being clouded by deeds passing between adverse claimants, may, with full knowledge of these facts, remain inactive, without prejudicing his rights, for any length of time, short of the period prescribed in the statutes of limitation.

The case of Chamberlain v. Showalter, a Texas case reported in 5 Tex. Civ. App. 226, 23 S. W. 1017, is similar in all material respects to the case under consideration. The defendants claim through forged instruments and pleaded estoppel, in this, that plaintiff knew of the existence and registration of the instruments under which defendant claimed, knew that the land was liable to be sold to innocent purchasers without notice of any fraud, that he took no steps to warn the defendant or any one else that the deeds were forgeries, and that defendant purchased in good faith without notice of plaintiff's claim, and thus he was estopped to assert title to the land.

In disposing of the plea of estoppel in this case, the Court of Civil Appeals said:

"To constitute an estate by estoppel, something more must have been shown than mere knowledge of the owner of the existence of a forged title upon the record of the county wherein the land was situated, and delay in asserting his rights. Some affirmative act of the

owner must be shown, as, for example, that he, by word or act, created the impression that the adverse title was valid, and thereby induced another to act, or knowing that another was about to acquire the apparent title in good faith, stood by and willfully suffered it to be consummated. An omission, to be an estoppel, must be in reference to some duty devolving upon him. Where the law allows one a certain time in which to assert his right, it is implied that his right will remain available to him during that period, and although fully informed of the adverse claim, his waiting merely cannot be held of itself to bar his title."

The case of McLaren v. Jones, 89 Tex. 132, 33 S. W. 849, decided by our Supreme Court, was based upon facts much stronger than the facts supporting the plea of estoppel in the case under consideration. The facts relied on against Mrs. McLaren were that, after her land had been sold by a trustee under a deed of trust and deed delivered to the purchasers, she received a part of the purchase money paid and appropriated it to her own use, and wrote a letter to her agent stating that she was satisfied with the sale and would abide by it. For about two years she permitted one of the defendants to remain in possession and improve the land. She was not a resident of the state, and there was no evidence to show that she knew Jones was in possession or that he was making improvements, other than the evidence that might have been afforded by constructive notice due to his actual possession. The court said:

"Powell, Counds and Mann did not purchase the land upon any representations made by Mrs. McLaren before the sale, and what occurred subsequently thereto could not possibly have influenced them in making the purchase. The letter written by Mrs. McLaren was addressed to a third person, and it does not appear to have been written with a view to its communication to the purchasers, nor is there anything to show that she knew who had purchased it. One who hears of the declarations of another, not made to him nor intended to be communicated to him, cannot set up such declarations to estop the person making such declarations as to any right that the latter may have concerning the matter in dispute." Bank v. Todd, 47 Conn. 217; Morgan v. Spangler, 14 Ohio St. 102; Maguire v. Selden, 103 N. Y. 642, 8 N. E. 517; Durant v. Pratt, 55 Vt. 270.

A California case, based upon facts almost identical with the facts of the case at bar, is Meley v. Collins, 41 Cal. 663, 10 Am. Rep. 279.

The defendants in that case claimed under a chain of title based on a deed purporting to have been executed by the plaintiff, but, in fact, was a forgery. Soon after the execution of the forged deed, plaintiff learned of its existence and that it had been recorded, but began no action for more than 5 years. The contention there was the same as is made here; that is, that as plaintiff stood by, took no steps to have the forged deed annulled, thereby permitting parties claiming under the deed to deal with the property as their own, and as the defendant purchased the property under these circumstances, the plaintiff was estopped to deny the validity of the deed. The court refused to concur in this view, and, among other things, said:

"The owner of property is justified in relying upon his title; and he is under no obligation to proceed against all persons who may assert a hostile title, although another person might be deceived by the apparent genuineness of such hostile title. * * * In the case at bar, it cannot be said that the plaintiff, by any act or neglect, induced the purchase by the defendant. It was not her duty, if her own interest did not require it, to take the necessary steps to have the deed to Gilbert [the forged deed] annulled. It is true that a purchaser from him, relying on the record, might be injured, but he could readily protect himself by exacting from his vendor the necessary covenants."

[13] In Crest v. Jack, 3 Watts (Pa.) 240, 27 Am. Dec. 355, 356, it is said that equity on the mere ground of silence does not relieve one who is perfectly acquainted with his rights or has the means of becoming so, and yet willfully undertakes to proceed in spending money on the land of another without obtaining or asking his consent. His ignorance, if it exists, is willful, and he acts at his peril.

Any number of authorities could be added, but to do so would lengthen this opinion to no purpose; however, we will cite the following additional authorities in harmony with those given above: Hunt v. Reilly, 24 R. I. 68, 52 Atl. 681, 59 L. R. A. 208, 96 Am. St. Rep. 707; Waits v. Moore, 89 Ark. 19, 115 S. W. 932; Blodgett v. Perry, 97 Mo. 263, 10 S. W. 892, 10 Am. St. Rep. 307; Wiser v. Lawler, 189 U. S. 260, 23 Sup. Ct. 624, 47 L. Ed. 802; Bramble v. Kingsbury, 39 Ark. 131; Simpson v. Biffle, 63 Ark. 289, 38 S. W. 345; Myers v. Viverett, 110 Miss. 334, 70 South. 452.

Because we find no error in the record, and in harmony with the views expressed in this opinion, the judgment of the trial court is affirmed.

Affirmed.