R. J. GARDENER v. T. B. AND L. E. GRIFFITH, EXECUTORS.

No. 866. Decided February 15, 1900.

**1. Executory Sale of Land—Election of Remedies by Vendor.**

Generally, the vendor in an executory contract, by election to sue for the purchase money, deprives himself of the right to rescind and claim the land—unless, after suit, the vendee repudiates liability for purchase money, as by pleading limitation. But, if the vendee sell to another, foreclosure against the first vendee will not affect such purchaser from him, not made a party; and therefore will not estop one buying at the foreclosure sale, and who is thereby placed in the shoes of the vendor, from claiming rescission for nonpayment, as against such subsequent vendee. Distinguishing Thompson v. Robinson, ante, p. 165, from numerous cases announcing the general rule as to election by vendor. (Pp. 358, 359.)

**2. Same—Foreclosure—Sale of Part—Rescission.**

Though the vendor foreclosing for purchase money sell, under the foreclosure, only a part of the land subject to his lien, the general rule that his election to foreclose is a waiver of his right to rescind applies to the land not sold. He can not foreclose as to part and rescind as to the remainder. (P. 359.)

**3. Same—Election to Foreclose—Effect on Legal Title.**

When the vendor whose deed would otherwise convey the legal title, retains it by taking a mortgage back for the purchase money, and then, by electing to foreclose, loses his right to claim rescission, the superior legal title vests in the grantee. (P. 359.)

QUESTION CERTIFIED from the Court of Civil Appeals for the Fourth District, in an appeal from Nacogdoches County.

*Dial & Chestnut* and *Lewis & Lewis,* for appellant.—In executory contracts for the sale of land the superior title remains in the vendor until the purchase money has been paid, and the court erred in ruling out evidence of the fact that payment had not been made. Rev. Stats., arts. 2148, 2150; Dunlap v. Wright, 11 Texas, 600; Flanagan v. Cushman, 48 Texas, 241; Webster v. Mann, 52 Texas, 426; McAlpin v. Burnett, 19 Texas, 497; Baker v. Compton, 52 Texas, 252; Cassaday v. Frankland, 55 Texas, 460; Ufford v. Wells, 52 Texas, 612; Roosevelt v. Davis, 49 Texas, 463; White v. Cole, 29 S. W. Rep., 1148, and authorities cited; Adkins v. Harn, 23 S. W. Rep., 29; McPherson v. Johnson, 69 Texas, 485.

On the death of a person title to his property vests immediately in his heirs, subject to being divested in course of administration by sale under orders and by approval of the probate court, and the superior title remains in them when an executory contract of sale is made by the administrator of decedent, and the heirs in possession, after the administration has ceased and all property of the estate been sold, can not be ousted by the purchaser or his vendees, they taking with notice by virtue of the statutes regulating such sales, of the superior title in vendor, when they have failed to perfect their title by payment of the purchase money, or do not show that the same has been paid. Same authorities; also Burgess v. Millican, 50 Texas, 401.

*Perkins, Matthews & Harris,* for appellees.—In executory contracts for the sale of land the superior title remains in the vendor until the purchase money has been paid or the mortgage lien foreclosed. Dunlap v. Wright, 11 Texas, 600; Burgess v. Millican, 50 Texas, 401.

In this case the administrator of Cicero Rusk, deceased, had two remedies; he could have asserted his superior title and have sued for the land; or he could sue for judgment against W. H. Harris and the sureties on his note, together with an order of foreclosure of his mortgage lien. He elected the latter remedy and sued for judgment against his vendee and his sureties and an order of foreclosure of his mortgage lien. By so doing he waived his right to sue for the land or to in any way assert his superior title, and was forever estopped from possessing the land as against his vendee or those holding under him. The heirs of Cicero Rusk are bound by the acts of his administrator and have no right to claim any privilege of law or equity which had been waived by him by his acts as such administrator. They could and should pursue the judgment so obtained by him to the satisfaction of their debt, if any they have, but they have had their day in court, hence the evidence attempted to be offered by defendants to show that the purchase money had not been paid was immaterial and the court did not err in excluding it.

GAINES, CHIEF JUSTICE.—The Court of Civil Appeals for the Fourth Supreme Judicial District has certified the following question for our determination:

"The above styled suit, now pending in this court, was instituted by appellees as executors of the estate of L. E. Griffith, deceased, against appellant and A. J. Murphy, to recover sixty acres of land off the I. G. Parker survey in Nacogdoches County. The land was a part of a 425-acre survey set apart to Cicero Rusk in a partition of the estate of T. J. Rusk. Cicero Rusk was killed in 1864 in battle, and afterwards administration was had on his estate. In July, 1869, under order of the probate court, William Clark, administrator de bonis non of the estate of Cicero Rusk, sold the 425 acres of land to W. H. Harris for $2050, and a deed to the land was executed on November 10, 1869, and on same day W. H. Harris executed a note to the administrator for $2050, with personal security, payable in twelve months, and at the same time executed a mortgage on the land to secure the purchase money. March 4, 1871, William Clark, the administrator, recovered judgment in the District Court of Nacogdoches County, on said note, in the sum of $2171.88 and a foreclosure of the lien. On the 3d day of May, 1871, an order of sale was issued from said judgment, followed by a venditioni exponas, and a part of the land, said 425 acres, was sold in blocks; block No. 1 to J. B. Harris for $2.50; blocks 2, 3, 4, 5, 6, and 7 were sold to C. M. Raguet, block 5 for $50, the others at $100 each, total amount for all blocks sold, $552.50. Number of acres sold, 247.80 acres. All the land purchased by C. M. Raguet, except 100 acres, was in trust for W. H. Harris, and on the 2d of April, 1878, he made a deed to all he purchased, except the 100 acres, to S. J. Griffith, wife of L. E. Griffith, plaintiff's testator. In October, 1872, W. H. Harris and wife, E. N. Harris were living on a portion of said 425-acre block and they—W. H. Harris acting through his attorney in fact, J. B. Harris,—sold the same to S. J. Griffith, wife of plaintiff's testator, L. E. Griffith. The portion of land so sold by them is claimed by plaintiffs to embrace the 60 acres sued for (being a part of the original tract not sold by the administrator). S. J. Griffith died 27th of May, 1887. She made her will on the 15th of April, 1887. Her interest in this 425-acre tract was bequeathed to her husband, L. E. Griffith.

"Defendant R. J. Gardener was in possession of the land sued for at the institution of the suit, holding the same as guardian of his wife's children by a former husband and under powers of attorney from John C. Rusk, T. J. Rusk, and C. Rusk, all of whom are heirs of Cicero Rusk, deceased. The record is silent as to any other payment having been made for the 425 acres sold by William Clark, administrator of Cicero Rusk's estate, to W. H. Harris than the $552.50 paid at the sale by J. B. Harris and C. M. Raguet to the sheriff under the order of sale, and is silent as to a sale of any other portion of the 425 acres under said judgment. The administrator, William Clark, died in 1884 or 1885. Since his death, no other administrator has been appointed on said estate and nothing more has been done with same, and all the property, real and personal, belonging to said estate had been sold by said Clark and previous administrators thereof. It is uncontroverted that all of

the purchase money has never been paid. It is the contention of appellees, which was sustained by the District Court, that when the administrator of the estate of Cicero Rusk sued on the debt and obtained a foreclosure of the mortgage, he thereby affirmed the contract of sale and the legal title to the land was transferred to W. H. Harris, the vendee of the land, while it is the contention of appellant that the legal title to the land not sold under the order of sale is still in the heirs of Cicero Rusk. The question of limitation does not arise in the case.

"Question. Did the foreclosure of the mortgage lien and the sale of a portion of the land deprive the heirs of Cicero Rusk of the legal title to the land not sold?

"This question is asked in view of the decisions in the cases of Roeder v. Robson, 20 Texas, 754; Roberts Heirs v. Lovejoy, 60 Texas, 255; Bartley v. Harris, 70 Texas, 181, and the decision in Thompson v. Robinson, 54 Southwestern Reporter, 243 (ante, p. 165), recently decided by the Supreme Court."

When, under an executory contract of sale of land, the vendee has made default, the vendor has an election to sue for the land or for the purchase money; and the general rule is that by electing the latter remedy, he deprives himself of the right to claim the land. Such is the rule laid down in the three cases first mentioned by the Court of Civil Appeals in their certificate. It is also the rule announced in the following cases: McPherson v. Johnson, 69 Texas, 484; Summerhill v. Hanner, 72 Texas, 224; Coddington v. Wells, 59 Texas, 49. The rule is, however subject to the modification that if, after suit, the vendee repudiate his liability under the contract, as by pleading the statute of limitation to the debt for the purchase money, the right of election may again revive and the vendor may recover the land. In McPherson v. Johnson, supra, the court say: "But we take this to be the rule: If, after such default as justifies the vendor in rescinding the sale, he proceeds for the price, he loses his right of rescission; provided, the vendee avail himself of his privilege to pay the debt. But the contract still remains executory, and the latter can not, by pleading limitation, defeat the action for the debt, and still claim the land under a contract with which he has refused to comply."

But it is held that where the vendee has sold to another, an attempted foreclosure of the vendor's lien in a suit to which the subsequent purchaser has not been made a party, does not have the effect to affirm the sale as a finality, or to invest such subsequent purchaser with a perfect title, either legal or equitable, to the premises. Ufford v. Wells, 52 Texas, 612; Foster v. Powers, 64 Texas, 247; Stone Land and Cattle Co. v. Boon, 73 Texas, 549. So, in the case last referred to by the Court of Civil Appeals (Thompson v. Robinson, ante, p. 165), it was determined that the position of a subsequent vendee of land sold under an executory contract was not bettered by a foreclosure and sale for the purchase money, he not having been a party to the suit in which the foreclosure was decreed. Since the decree did not estop the

subsequent vendee, it did not estop the vendor as to him, and the sole effect of the foreclosure and sale was to place the purchaser at that sale in the shoes of the vendor. These were the grounds upon which that decision was placed, and we think they clearly distinguish it from other cases in this court in which it was held that the vendor was estopped from claiming the land by a suit to recover the purchase money.

We see nothing in the case shown by the certificate to take it out of the general rule. On the contrary, it is a very strong case for its application. The administrator of their ancestor not only obtained a decree of foreclosure upon the entire tract of land, but also sold about one-half of it under the decree. There was no subvendee in the case; so that all who were interested in the land were barred by the judgment. We apprehend that if the vendor rescinds, he must rescind as a whole, and that after causing a sale of a part of a tract under a foreclosure, he can not claim a rescission as to the remainder.

We are also of opinion that when, as in this case, a deed has been made which of itself would convey the legal title, and where a mortgage has been taken at the same time to secure the payment of the purchase money, and when the grantor has finally lost the right to claim a rescission of the contract, the legal title vests in the grantee. We therefore answer the question in the affirmative.