McBRIDE et al. v. LOOMIS. (No. 58-2777.)

(Commission of Appeals of Texas, Section A. May 28, 1919.)

1. TRESPASS TO TRY TITLE ⟂41(2)—COMMON GRANTOR—PRIMA FACIE PROOF.

Evidence that defendant in trespass to try title claims under a common grantor is prima facie proof that such grantor had the title at the time he undertook to convey the right which the defendant claims, and this necessarily involves the assumption that he had acquired the title of all previous owners.

2. TRESPASS TO TRY TITLE ⟂38(2)—BURDEN OF PROOF—COMMON SOURCE OF TITLE.

In trespass to try title, where there was evidence that both parties claimed under M., who was not shown to have had any title, as a common source of title, defendant also showing the acquisition by him of the interest of the heirs of a person admitted to have previously had title, burden is on defendant to show that M. had not acquired an equitable title from the former owner.

3. TRESPASS TO TRY TITLE ⟂18—DEFENSES —OUTSTANDING TITLE.

While it is not necessary for a defendant in trespass to try title to connect himself with an outstanding title, it is necessary that he establish the validity of such outstanding title.

4. EXECUTORS AND ADMINISTRATORS ⟂145— ADMINISTRATOR'S DEED—EFFECT.

An administrator's deed to land is but an assertion that the title remained in decedent to the date of his death, and is not evidence of such ownership.

5. DEEDS ⟂82—VALIDITY—RECORDATION.

The recordation of a deed is not essential to its validity.

6. TRIAL ⟂53—EVIDENCE.

In trespass to try title, where defendant, relying on a deed, introduced the same in evidence, the recitals in the deed were available to the plaintiff in the establishment of his title, although defendant was also relying on a quitclaim deed from heirs of a former owner.

7. TRESPASS TO TRY TITLE ⟂11—COMMON SOURCE.

Where one held land for years under a void administrator's deed, a quitclaim deed from the heirs of one who had owned the property at a time prior to the death of the administrator's deceased did not constitute the acquisition of a new and independent title, but merely supplemented the title theretofore held and claimed.

8. TRESPASS TO TRY TITLE ⟂10—SUFFICIENCY OF EQUITABLE TITLE TO SUPPORT ACTION.

The assertion of an equitable title arising out of a contract to convey and payment of the purchase money is sufficient to support an action in trespass to try title.

9. LIMITATION OF ACTIONS ⟂39(12)—TRESPASS TO TRY TITLE. -

The statute of limitations of four years, or any other period, unaccompanied by adverse possession, is without application in trespass to try title.

Appeal from Court of Civil Appeals of Eighth Supreme Judicial District.

Action by Thomas McBride and others against A. M. Loomis. From a judgment of the Appellate Court (170 S. W. 825), affirming a judgment for defendant, plaintiffs appeal. Reversed and remanded, with directions.

F. G. Morris and Sam B. Gillette, both of El Paso, for appellants.

T. A. Falvey, Peyton F. Edwards, and Loomis & Knollenberg, all of El Paso, for appellee.

SONFIELD, P. J. Action in trespass to try title by Thomas McBride and others, plaintiffs, against A. M. Loomis, defendant, involving a tract of land in El Paso county. Defendant pleaded not guilty, the statutes of limitation of three, four, five, and ten years, and improvements in good faith. The court peremptorily instructed the jury to return a verdict for the defendant. On appeal the Court of Civil Appeals affirmed the judgment of the district court, Associate Justice Higgins dissenting in part. 170 S. W. 825.

Plaintiffs sue as the heirs of Anna Louisa McBride, who was the sole heir of John E. McBride, the evidence establishing, and the Court of Civil Appeals finding, that they were such heirs.

Plaintiffs, for the sole purpose of proving common source of title, introduced in evidence a deed from Charles Kerber, temporary administrator of the estate of John E.

McBride, to John C. Ford, dated April 1, 1881, conveying the land in controversy, and a regular chain of transfers from and under said Ford to defendant Loomis, the deed to defendant being dated the 5th day of January, 1906, and, after establishing heirship, plaintiffs rested.

The material documentary evidence adduced by defendant was as follows: Stipulation between the parties that Charles H. Howard had title to the land in controversy during and prior to the year 1874, and as to what title, if any, he had after that date should be left open to be shown by the evidence; minutes of the county court of El Paso county in the estate of John E. McBride, deceased, showing report of sale of the land in controversy by Charles Kerber, temporary administrator of the estate to John C. Ford, the sale being reported as made on February 9, 1881, and order of confirmation of said sale dated February 15, 1881; minutes of the same court in the estate of Charles H. Howard, deceased, showing the appointment and qualification of Charles Kerber as administrator of the estate at the March term, 1878; and an order in the said estate reading as follows:

"Came on to be heard the complaint of John C. Ford against Charles Kerber, administrator of the estate of Charles H. Howard, for title to certain land hereinafter described, and it appearing to the court that said Charles Kerber had accepted services of said complaint and waived time and issuance of citation, and it appearing further that said Charles H. Howard during his lifetime at various times in the years 1875, 1876, and 1877 agreed in writing to make deeds to John E. McBride for certain parcels of land in the Quadrilla, in El Paso county, Tex., and that said John E. McBride fully paid for said lands according to the terms of said agreement, and that said Charles H. Howard departed this life December 18, 1877, without making deeds to said lands to the said McBride in accordance with such agreement, and it further appearing to the court that said John C. Ford has become the owner of all of the said John E. McBride interest in and to said land by purchase under a sale of the same made by Charles Kerber, temporary administrator of the estate of John E. McBride, deceased, on February 9, 1881, in obedience to an order of this court made and entered on January 24, 1881, it is therefore the order, judgment, and decree of this court that Charles Kerber, administrator of the estate of Charles H. Howard, convey by good and sufficient deeds to said John C. Ford all the right, title, and interest of said Charles H. Howard's estate in and to the following described tracts of land, to wit: Two certain tracts of land lying and being in El Paso county, Tex. [here follows description of said two tracts by metes and bounds, which includes the land in controversy]."

Defendant introduced a deed from Charles Kerber, administrator of the estate of Charles H. Howard, to John C. Ford, dated April 1, 1881, the deed incorporating the

212 S.W.—31

above and foregoing order of the court; the chain of transfers and deeds from John C. Ford to defendant, being the same deeds introduced by plaintiffs to show common source, all the deeds so offered by the plaintiff for this purpose being introduced by the defendant, except the deed from Charles Kerber, temporary administrator of the estate of John E. McBride, to John C. Ford; quitclaim deed from the heirs of Charles H. Howard through their attorney in fact, George W. Graves, to defendant dated September 20, 1907, conveying to defendant all the interest of the heirs of Charles H. Howard in and to the land in controversy. It was agreed between the parties that these executing the power of attorney under which the deed was executed were the sole heirs of Charles H. Howard. The record discloses that both John E. McBride and Charles H. Howard died in the year 1877.

It is conceded by all the parties, and recognized by the Court of Civil Appeals, that the sale by Kerber as temporary administrator of the estate of John E. McBride was void. This being true, it cannot be questioned that, viewed alone in the light of plaintiffs' evidence, it was established that John E. McBride was common source of title, and plaintiffs entitled to recover the land. The Court of Civil Appeals so holds.

The court further held, however, that the parties having stipulated that Howard owned the land in 1874, the defendant, by introducing the deed from Kerber, administrator of Howard, to Ford, showed the common source back of McBride in Howard. And it thereupon devolved upon plaintiffs to establish that the common source had acquired the Howard title, and this, under the majority opinion, without reference to the recitals in the probate order and in the deed from the administrator of the Howard estate to Ford.

[1-3] The stipulation of the parties to the effect that Howard had the title in the year 1874 did not rebut plaintiffs' prima facie case. Evidence that the defendant claims title under the common grantor is prima facie proof that such grantor had the title at the time he undertook to convey the right which the defendant claims, and this necessarily involves the assumption that he had acquired the title of all previous owners. Rice v. Railway Co., 87 Tex. 90, 26 S. W. 1047, 47 Am. St. Rep. 72. As said in Ogden & Johnson v. Bosse, 86 Tex. 346, 24 S. W. 802:

"Proof that defendant claims under the same vendor with plaintiff prima facie establishes plaintiff's title, back of the common source, and this may be done by showing a claim through a void deed."

It is not sufficient, therefore, to show that Howard at one time held the title. De

fendant must go further and show at least prima facie that the common source was without title; the presumption obtaining that the title agreed to have been in Howard in 1874 had passed to the common source. Nor does the quitclaim deed from the heirs of Howard to defendant, viewed in connection with such stipulation, rebut plaintiffs' prima facie case. While it is not necessary that defendant connect himself with an outstanding title, it is necessary that he establish the validity of such outstanding title. The mere production of the quitclaim deed showing an assertion or claim of title on the part of the heirs, together with the stipulation, in view of the rule of common source, falls far short of establishing any title in the Howard heirs. Rice v. Railway Co., supra.

[4, 5] The deed from the administrator of the Howard estate, without reference to its recitals, considered as though it were but an ordinary administrator's deed, stands on a parity with the quitclaim deed from the Howard heirs and has no greater probative force. Claiming under McBride as common source, the onus was on defendant to prove affirmatively, not merely that Howard had the title in the year 1874, but also that such previous title did not pass into McBride, the common source, prior to the death of Howard and McBride; both having died in the year 1877. This burden was not discharged by the introduction of the administrator's deed, which is but an assertion that the title remained in Howard to the date of his death. It is an assertion with no facts to sustain it other than that the records of El Paso county shows no conveyance out of Howard. There is no evidence that Howard asserted ownership of the land between the year 1874, when it was stipulated he had the title, and the date of his death in 1877. It does not appear that the land was inventoried as a part of the Howard estate, nor is there evidence of any act of ownership of any character on the part of Howard between the years 1874 and 1877. The recordation of a deed is not essential to its validity, and the fact that a conveyance out of Howard does not appear upon the records of the county in which the land was situated does not, in connection with the other evidence adduced by defendant herein discussed, rebut the presumption arising out of the rule of common source that McBride, the common source, acquired the Howard title.

[6] The deed from the administrator of the Howard estate to Ford was introduced without qualification or limitation by defendant. Were the recitals of this deed evidence as against the defendant of the facts recited?

Defendant concedes that, if the recitals were in a deed constituting a link in a chain of title under which he claimed, such re-citals would be admissible against him. He seeks to avoid their effect by repudiating any claim thereunder and by denial that he was either a party or privy thereto, basing his title upon the quitclaim from the Howard heirs, a separate and distinct title.

Defendant claimed title under the administrator's deed. He testified that he went into possession of and occupied the land in January, 1906, shortly after the execution of the deed to him under the Ford chain of title, and prior to the execution of the deed from the Howard heirs. His claim of title and possession were referable exclusively to his deed under the Ford title of which the deed in question formed a link. Defendant's predecessors in title were in possession and asserting the Howard title through McBride many years prior to the execution of the quitclaim from the Howard heirs. Nor is there evidence of a repudiation of claim under this deed to the date of and during the trial of this cause. In so far as the record discloses, the deed constituted one of the links in a chain of title upon which he relied. There was no admission in the trial court by defendant that the administrator's deed was invalid; such admission being made only on appeal. The deed being thus relied on by defendant, and it, together with its recitals, having been introduced by him, the recitals were available to plaintiffs in the establishment of their title.

[7] Further, if the deed from the administrator of the Howard estate to Ford had any effect on common source, it, considered as a whole, in connection with its recitals, but established Howard as a prior or more remote common source; both plaintiffs and defendant claiming under Howard through McBride. The inception of defendant's title was under Howard as common source. The quitclaim deed from the Howard heirs to defendant did not constitute the acquisition of a new and independent title, but merely supplemented the title theretofore held and claimed by him under Howard, the common source.

In our view of the case, the introduction by defendant without qualification or limitation of the deed from the administrator of the Howard estate to Ford, together with the probate order upon which same was based, established that McBride acquired from Howard the equitable title to the land, and there passed to the heirs of Howard the bare legal title, which is subordinate to the title which thus vested in McBride. The deeds to Ford from the administrators of the estates of McBride and Howard being void and conveying no title, it follows that, if McBride was the common source, defendant showed no title whatever; if Howard be regarded as common source, plaintiffs claiming through McBride, holding the equitable title, and defendant under the quit-

claim deed from the Howard heirs, holding only the bare legal title, plaintiffs have established the superior title to the land.

Defendant asserts that at best plaintiffs show but an equity entitling them to specific performance, and the cause of action was barred by the four or ten year statutes of limitation.

[8, 9] This action is for the recovery of land. Plaintiffs asserted an equitable title arising out of a contract to convey and payment of the purchase money. The title is sufficient to support the action. The statute of limitation of four years or of any other period, unaccompanied by adverse possession, is without application. Stafford v. Stafford, 96 Tex. 106, 70 S. W. 75.

Defendant pleaded limitation by adverse possession and improvements in good faith. These questions were not passed upon by the trial court or the Court of Civil Appeals, and we have not considered same.

We are of opinion that the judgment of the Court of Civil Appeals affirming the judgment of the district court should be reversed, and the cause remanded, with instruction to the court to find the record title in plaintiffs and determine the questions of limitation by adverse possession and improvements in good faith.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.