**W. T. CARTER & BRO. v. RHODEN et al.**

No. 2562.

Court of Civil Appeals of Texas. Beaumont.
May 9, 1934.

Rehearing Denied June 6, 1934.

children of Eli Rhoden, except his son T. W. Rhoden, suing as plaintiffs and interveners, against W. T. Carter & Bro., a partnership, and the individual members of the partnership. The plaintiffs and interveners pleaded the general issue of trespass to try title and the ten-year statute of limitation (Vernon's Ann. Civ. St. art. 5510). The defendants answered by pleas of general denial, not guilty, and the twenty-five year statute of limitation, under the provisions of article 5519a, Vernon's Annotated Texas Civil Statutes. Only the issue of ten-year limitation was submitted to the jury and, on the verdict finding that issue in favor of plaintiffs and interveners, judgment was entered for them for an undivided $8/10$ths interest in the land sued for. The appeal was duly perfected by the defendant against this judgment.

Appellees, plaintiffs and interveners below, offered in evidence the following chain of title. On the 8th day of October, 1835, the James Morgan league of land in Polk county was granted to James Morgan on application signed by "J. Morgan" at Nacogdoches, Tex., on the 16th day of January, 1835. By warranty deed executed in the state of Mississippi on the 7th day of January, 1862, "James Morgan" conveyed to R. W. B. Martin the following tract of land, being the James Morgan league of land in Polk county "a certain league of land granted to me as a colonist by the Government of Mexico, said league of land lying and being situated in the County of Polk, State of Texas and Menards creek in said County and for a more particular and minute description of said league of land as to metes and bounds reference is hereby made and may be had to the original titles and papers now on file in the General Land Office of the State of Texas at the City of Austin." By his warranty deed dated the 16th day of February, 1867, Martin conveyed the Morgan league of land to O. Teagarden, and by warranty deed dated the 9th day of March, 1867, Teagarden conveyed the same land to M. S. Mather. On January 1, 1875, M. S. Mather by deed executed by her attorneys in fact, G. W. Davis and H. M. Trueheart, conveyed the 200 acres of land in controversy, part of the Morgan league, to Charles Hogan who by deed dated the 30th day of August, 1877, filed for record the 26th day of September, 1908, conveyed the same 200 acres of land to Eli Rhoden. Rhoden died in the fall of 1881 and proof of heirship was made by appellees under Eli Rhoden to an $8/10$ths interest in the 200 acres of land. After introducing their

Baker, Botts, Andrews & Wharton and S. H. German, all of Houston, and M. M. Feagin, of Livingston, for appellants.

V. A. Collins, of Livingston, J. T. Lindsey, of Port Arthur, and C. A. Lord, of Beaumont, for appellees.

WALKER, Chief Justice.

This was a trespass to try title suit involving 200 acres of land, part of the James Morgan league in Polk county, by the widow and

chain of title, for the purpose of proving common source with appellants, appellees offered proof that T. W. Rhoden was also a son of Eli Rhoden. Then they offered a deed from T. W. Rhoden dated July 6, 1903, conveying the 200 acres of land in controversy to R. S. Walters; a deed from Walters dated July 8, 1903, conveying the same tract of land by metes and bounds to Wm. Carlisle & Co.; a deed from Wm. Carlisle & Co. dated December 1, 1909, conveying the same tract of land by metes and bounds to West Lumber Company; a deed from West Lumber Company dated October 18, 1926, conveying this same tract of land by metes and bounds to appellants W. T. Carter & Bro.

 Appellants assign error against the refusal of the trial court to submit the following question, duly requested by them:

"Was the James Morgan who signed the deed of January 7, 1862, the same J. Morgan to whom the James Morgan league of land in Polk County was granted on October 8, 1835?"

This question presented one of the determinative issues in the case because a negative answer thereto would have destroyed an essential link in appellees' chain of title. The evidence raised this question as one of fact for the jury. The circumstance that "James Morgan" executed his deed to Martin in Mississippi, was of strong probative force against the presumption that he was the James Morgan, a citizen of Texas, to whom the land was granted. On this issue it was said in Holland v. Blanchard (Tex. Civ. App.) 262 S. W. 97, 101:

"The law of this state (article 1107, Revised Statutes [now article 1292]) provides that all deeds of conveyance shall state the residence, that is to say, the town or city, county, and state of both grantor and grantee. This is not an idle provision of the law, but was made, in view of the similarity of the names of so many people, as a means of determining identity.

"Jones on the Law of Real Property, vol. 1, § 213, states the purpose of such recitals as follows:

" 'A description of a party to a deed by name, residence and occupation only furnishes the means of identification. That is all that any description can do. It does not in itself identify the party. It affords a presumption which is ordinarily all that is required.' "

But independent of that circumstance, the difference between the signature "J. Morgan" on the application and the signature "James Morgan" on the Martin deed raised the issue requested by appellants. These signatures differed so fundamentally that reasonable minds could hardly agree that they were written by the same person. This inference is strengthened by the circumstance that the application was signed "J. Morgan," while the deed was executed by "James Morgan." On this issue the general rule at common law was as stated in Cook v. Bank (Tex. Civ. App.) 33 S. W. 998, 999:

" * * * At common law the genuineness of disputed handwriting could not be determined by the court and jury by comparing it with other handwriting of the party."

However, on authority of Kennedy v. Upshaw, 64 Tex. 411, Cook v. Bank recognized the following exceptions to the general common-law rule:

"The well-established exceptions to this rule are (1) that if the paper admitted or proven to be in the handwriting of, or to have been subscribed by, him, was in evidence for some other purpose in the cause, the paper in question might be compared with it by the jury; and (2) where a document is of such date that we cannot reasonably be expected to find living persons acquainted with the handwriting of the supposed writer, either by having seen him write, or by having held correspondence with him, other ancient documents, which are proved to have been treated and regularly preserved as authentic, may be compared with the disputed one. Best, Ev. §§ 239, 240; Greenl. Ev. 578; Hickory v. U. S., 151 U. S. 305, 14 S. Ct. 334 [38 L. Ed. 170]."

This general exception was thus stated by the Supreme Court in the Upshaw Case:

"This evidence falls within the rule which permits the opinions of experts to be given, and permits the jury to determine for themselves, from an examination of the papers before them, whether the writing in controversy is genuine. The papers examined were already in the case and admitted to be genuine, or were such as the appellant was estopped to deny the genuineness of. 1 Greenleaf, 578, 581; 1 Wharton's Law of Evidence, 713; Abbott's Trial Evidence, 396; Best on Evidence, 239."

See, also, Commercial Standard Ins. Co. v. McGee (Tex. Civ. App.) 40 S.W.(2d) 1105, 1107; Griffin v. Home Ass'n, 151 Ala. 597, 44 So. 605; and Wade v. Ry. Co. (Tex. Civ. App.) 110 S. W. 84, 88.

 While there was no proof that the sig-

nature "J. Morgan" to the application was the handwriting of the James Morgan to whom the land was granted, or that it was subscribed by him, yet the application was of such date that, quoting Cook v. Bank, supra, "we cannot reasonably be expected to find living persons acquainted with the handwriting of the supposed writer, either by having seen him write, or by having held correspondence with him." The application for the land and the signature thereto were lawfully in evidence in support of the title issued to James Morgan, and for almost a century have been treated and regularly preserved as authentic. As the Morgan deed to Martin was properly before the jury as an essential link in appellees' chain of title, under the authorities cited, it was the prerogative of the jury to reach a conclusion upon the issue of identity by an examination and comparison of the signature upon the application with the signature upon the Martin deed, although the jury was not aided by expert testimony based upon said signatures, this, because the two signatures differ so fundamentally that even a nonexpert could discern the difference, and, for the further reason, quoting from the McGee Case, supra, "because expert testimony could only have furnished additional aid to the jury in determining the issue."

Against this conclusion, appellees assert that the personal signature of the grantor is not essential to the validity of his deed; that if he acknowledges it to be his, though actually written by another, he thereby adopts it and it becomes his act and deed as truly as if he had signed it with his own hand. The following authorities fully support this general proposition. Willis v. Lewis, 28 Tex. 185; Newton v. Emerson, 66 Tex. 145, 18 S. W. 348; McAllen v. Raphael (Tex. Civ. App.) 96 S. W 760; Mondragon v. Mondragon (Tex. Civ. App.) 239 S. W. 650; Trezevant v. Rains (Tex. Sup.) 19 S. W. 567. But this proposition does not support the ruling of the court refusing to submit the requested issue. The circumstances enumerated above merely raised an issue against identity, but in view of the long lapse of time since the execution of the two instruments, had the issue been submitted and found in appellees' favor, the authorities cited would have supported such finding.

What we have said above we think satisfactorily disposes of the counterproposition "such signature cannot be used in comparison with some other signature, alleged to be, but not proven to be, the signature of the owner of the land, for the purpose of showing forgery or impeaching the genuineness of the deed."

■■ We cannot agree with the counterproposition that appellants were estopped to ask the submission of the issue of identity. The facts of this counterproposition are as follows: After appellees had offered in evidence their chain of title and made proof of common source, the appellants offered in evidence all the deeds previously offered by appellees, except the deed from Charles Hogan to Eli Rhoden and the deed from T. W. Rhoden to R. S. Walters. In proving their chain of title, appellees offered only certified copies of the deeds through which they claimed. Appellants offered in evidence the original deed from James Morgan to Martin. Appellants filed no affidavit of forgery, and when the original deed was offered by them, the court inquired whether or not it was offered on the issue of forgery, to which counsel for appellants replied: "It is not a question of forgery." As appellees had offered both the application for the Morgan league of land and the Martin deed, appellants had the right to offer the original of the Martin deed on the very issue that the court refused to submit, that is, that the Morgan to whom the land was granted was not the Morgan who conveyed it to Martin. By offering the two deeds, appellees necessarily put in issue the fact of identity which, had there been no suspicious circumstances in evidence, would have been presumed as a matter of law in their favor, because of the identity of the two names. But when attacked by suspicious circumstances, such as we find in this case, the issue of identity becomes a question for the jury. In Holland v. Blanchard, supra, the court said:

"Similarity of names is never more than prima facie evidence of identity (6 Encl. of Evidence, 916), as stated by our Supreme Court. 'Similarity of name is said to be some evidence of identity.' Chamblee v. Tarbox, 27 Tex. 144, 147, 84 Am. Dec. 614."

See also Willis v. Gay, 48 Tex. 463; Auerbach v. Wylie, 84 Tex. 615, 19 S. W. 856, 20 S. W. 776. See, also, Kelly v. Consolidated Underwriters (Tex. Civ. App.) 300 S. W. 981, where, on rehearing, this court reviewed many authorities on the issue of "identity." The conclusion necessarily follows that merely by introducing the original Morgan-Martin deed appellants did not estop themselves to ask a submission of the issue of identity.

■■ While the general rule is recognized in Holland v. Blanchard, supra, to the effect that a party claiming under a deed is bound by the facts recited in his chain of title, as to names, identity of grantor and grantee,

etc., that proposition controls only as it relates to that particular chain of title; but the law is that the defendant may assert as many and different and conflicting titles as he is able to bring into court. 63 C. J. 1160. So, in so far as appellants claim under the Morgan-Martin deed, they were bound by its recitations, but under the general authorities summarized by Corpus Juris in support of the proposition just announced, they had the right to show a superior title to the Morgan-Martin title.

Again, appellants were not estopped by their reply to the court, "It is not a question of forgery," when they offered in evidence the original Morgan-Martin deed. For the reasons stated above, this deed was clearly admissible on the issue of identity, and no special plea was required as a basis for its introduction in evidence on that issue.

We now come to appellees' counterpropositions of common source. It is conceded that appellees and interveners claim under Eli Rhoden. It is also conceded that appellants claim under Eli Rhoden through T. W. Rhoden, his son, and under this claim were awarded by the judgment an undivided 2/10ths interest in the land. Under these facts Eli Rhoden was the common source of the title adjudicated by the judgment.

Since appellants claimed under Eli Rhoden as common source and, under this claim, recovered a 2/10ths interest in the land, appellees assert they could not show that the common source had no title. This proposition also involves the materiality of the question the court refused to submit to the jury, discussed above; for, if appellants could not attack the title of the common source, the issue of identity was immaterial to a proper disposition of the case.

Much has been written on the law of common source. It is the law of this state by statute, R. S. 1925, art. 7382, that in trespass to try title, where the parties claim through a common source, it is not necessary for the plaintiff to deraign title back of the common source. Temple Lumber Co. v. Arnold (Tex. Civ. App.) 14 S.W.(2d) 926; for many authorities on this point see 63 C. J. 1158, note 17. This rule, however, notwithstanding the statute, is one of evidence and not of estoppel, and does not prevent the defendant from showing that the common source has not acquired a superior outstanding title, McBride v. Loomis (Tex. Com. App.) 212 S. W. 480; that the common source owns the title of all previous owners is a mere presumption. Rice

v. St. Louis, A. & T. Ry. Co., 87 Tex. 90, 26 S. W. 1047, 47 Am. St. Rep. 72. The defendant may also defeat the common source title by showing that he owns a title superior to the title of the common source. Rice v. St. Louis, A. & T. Ry. Co., supra; McBride v. Loomis, supra; Temple Lumber Co. v. Arnold, supra. These general principles control appellees' counterpropositions of common source.

The rule that relieves the plaintiff of the burden of connecting the common source with the sovereignty of the soil must be invoked by him in order for him to enjoy its benefits. By this we mean that he should prove his title only by proof under the common source, that is, connect himself with the common source by a complete chain of title, connect defendants' claim of title with the same source, and show that his title from the common source is superior to that of the defendant. 63 C. J. 1185. On such a showing, the plaintiff has the prima facie right of recovery. Appellees did not rest their case upon this character of proof. They attempted to connect the common source with the sovereignty of the soil, thus making a complete exhibition of their chain of title; having proven one title from the sovereignty of the soil to the common source and rested, no presumption arises that the common source owned any other title. Philadelphia Trust Co. v. Johnson (Tex. Civ. App.) 257 S. W. 280. The proposition also has direct support in the analogy between proof of title under common source and proof of title under prior possession. By proof of title under prior possession, the plaintiff stands before the court with the presumption in his favor that he has title to the land in fee simple. This is the holding of the Supreme Court in House v. Reavis, 89 Tex. 626, 35 S. W. 1063, 1065. In that case the analogy between the two methods of proof was thus recognized: "The case (proof under prior possession) is not different in its legal effect from that in which the plaintiff and the defendant claim title to the property in controversy from a common source." Where the plaintiff, claiming under prior possession, undertakes to connect the prior possessor with the sovereignty of the soil, he must do so by a good chain of title. A defect in this chain of title destroys the presumption of title in the prior possessor. McCarthy v. Houston Oil Co. (Tex. Civ. App.) 221 S. W. 307. So, in order to defeat the title of the common source, appellants had the right to send to the jury the issue of identity. A finding on that issue in their favor, under the

proposition just discussed, would establish the fact that the title to the land in controversy never vested in the common source.

■ On another theory appellants raised an issue against title in the common source. Had the requested issue been found in their favor, then the title to the land rested in the Morgan heirs. In West Lumber Co. v. Allen, 244 S. W. 499, by the Texas Commission of Appeals, appellants were awarded the title of the Morgan heirs to the entire Morgan league. In that case the Supreme Court held that the Morgan title had been abandoned and that appellants had acquired it by prior appropriation. While appellees were not parties to that suit, yet the judgment of the Supreme Court in that case was available to appellants as a muniment of title. The judgment had the effect of vesting the title of the Morgan heirs in appellants as effectually as would a voluntary conveyance by them. Campbell v. McLoughlin (Tex. Civ. App.) 270 S. W. 257, same case by Commission of Appeals 280 S. W. 189. So, had the requested issue been found in favor of appellants, they would have established a title in themselves superior to the title of the common source. On another theory hereinafter discussed, appellants raise the issue that the common source did not own the title to the land.

■■ Appellants vigorously attack the verdict of the jury in appellees' favor on the issue of ten-year limitation. The facts in support of this finding are as follows: Mrs. Mather, in her deed by her attorneys in fact, Geo. W. Davis and H. M. Trueheart, to Charles Hogan, dated January 1, 1875, reserved a vendor's lien against the land to secure the payment of the vendor's lien note of $80, payable to bearer, taken by her as part of the consideration for the sale of the land. In his deed to Eli Rhoden, Hogan made no reference to this note. On April 17, 1879, Davis and Henry Sayles, claiming to own the note, filed suit thereon in the district court of Galveston county where the note was payable, against Charles Hogan, praying for judgment for the amount of the note and for foreclosure of the vendor's lien. Eli Rhoden was in no way a party to that suit. Judgment in that case was entered on January 5, 1882, granting plaintiffs all the relief prayed for and ordering the sale of the 200 acres of land in controversy to satisfy the amount of the judgment. Order of sale issued as directed and, under sale regularly made, George W. Davis became the purchaser; and by deed dated 4th day of April, 1882, filed for record April 19, 1882, the sheriff of Polk county conveyed the 200 acres of land to George W. Davis. Davis never rendered the land for taxes and never paid any taxes thereon, and there is no suggestion in the record that either he or Mrs. Mather or any one claiming under them ever asserted any claim to the land under the sheriff's deed. Though Eli Rhoden's deed from Hogan was not of record until long after the land was sold by the sheriff, he was in possession at the time suit was filed and had been in possession from about the date of his purchase from Hogan, and the evidence clearly raised the issue that his heirs were in continuous possession from his death until 1889, and that John Rhoden, one of the sons of Eli Rhoden, holding for all the appellees, made two crops on the land after he married in 1889. In order to show ten-year possession subsequent to April 4, 1882, the date of the sheriff's deed to Davis, appellees rely upon the statement just made, which carried the continuous possession up to 1891, and the testimony of T. W. Rhoden, quoting from appellees' brief, "that the field was cultivated by the Rhodens each and every year after the death of his father for ten or twelve years." Twelve years from the death of Eli Rhoden would make more than ten years' continuous possession subsequent to April 4, 1882.

In support of their contention that T. W. Rhoden's testimony showed ten years' continuous possession, appellees advance the following proposition:

"When he (T. W. Rhoden) admitted that the Rhodens 'cultivated the field on the 200 acres ten or twelve years after his father died, the jury had a right, yea, it was its duty—to make it twelve years. This would prove cultivation, use and enjoyment in plaintiffs', the heirs of Eli Rhoden, up to 1893."

This is not a sound legal proposition. The burden rested upon appellees to show ten years' continuous possession. The most that can be said under the testimony of Tom Rhoden is that it was as reasonably probable that the heirs of Eli Rhoden were in possession of the land only ten years after the death of their father as it was that they were in possession for twelve years. Such a showing did not meet the burden of proof imposed by law upon appellees. They also contend that during the year of 1892, Bill White, a son-in-law of Eli Rhoden, was in possession, but there was no showing that his possession was in privity with the heirs of Eli Rhoden. On these conclusions it follows that appellees failed to show ten years' continuous possession from April 4, 1882.

In view of another trial the following principles of law become material on the issue of limitation. Appellants contend that the sheriff's deed divested out of appellees all right, title, and claim to the 200 acres of land and, therefore, not holding under a deed, their claim was restricted, under the statute of ten-year limitation, to 160 acres. As appellees did not claim a specific tract of 160 acres, nor an undivided interest of 160 acres in the 200 acres with prayer for partition, the point is made that the verdict, finding the issue of ten-year limitation in appellees' favor, was insufficient to support the judgment for any portion of the land. Appellants' proposition does not control the particular facts of this case. In the suit of Davis and Sayles v. Hogan, Eli Rhoden was not a necessary party. Since he and his heirs were in possession when the suit was filed, judgment taken, and the land sold, the fact that the deed from Hogan to Eli Rhoden was not of record is immaterial. Not being sued, appellees, as heirs of Eli Rhoden, had the right to redeem the land from Davis by paying the amount of the vendor's lien. O'Connor v. Vineyard, 91 Tex. 488, 44 S. W. 485; Smith v. Crosby, 86 Tex. 15, 23 S. W. 10, 40 Am. St. Rep. 818; Bates v. Bacon, 66 Tex. 348, 1 S. W. 256. See, also, Wier v. Yates (Tex. Civ. App.) 237 S. W. 623; Thompson v. Robinson, 93 Tex. 165, 54 S. W. 243, 77 Am. St. Rep. 843; Gardener v. Griffith's Executors, 93 Tex. 355, 55 S. W. 314. Davis by his purchase acquired the legal title to the 200 acres of land, but appellees, holding under the deed from Hogan, had the right to acquire from him this legal title by paying the amount of the vendor's lien. It was held by Thompson v. Robinson, supra, and Gardener v. Griffith's Executors, supra, that a subvendee not a party to a foreclosure suit against his vendor, sustains the same relation to the purchaser at the foreclosure sale as the original vendee sustained to the original vendor. This proposition supports the conclusion that the continued possession of appellees was under their claim through the Eli Rhoden-Chas. Hogan deed. Smith v. Montes, 11 Tex. 24; Harn v. Smith, 79 Tex. 310, 15 S. W. 240, 23 Am. St. Rep. 340; Texas & P. Ry. Co. v. Maynard (Tex. Civ. App.) 51 S. W. 255; Knight v. Knight, 178 Ill. 553, 53 N. E. 306; Stearns v. Hendersass, 9 Cush. (Mass.) 497, 57 Am. Dec. 65; Murray v. Hoyle, 92 Ala. 559, 9 So. 368; Thomson v. Weisman, 98 Tex. 170, 82 S. W. 503. The authorities also support the proposition that the possession of appellees, immediately after the foreclosure sale under the judgment against Hogan, was sufficient to start the running of the statute of ten-year limitation, in favor of appellees against the purchaser at the sale. Thomson v. Weisman, supra; McCarthy v. Houston Oil Co. of Texas (Tex. Civ. App.) 221 S. W. 307; Pearson v. Boyd, 62 Tex. 541. So, had appellees shown ten years' continuous possession subsequent to April 4, 1882, they would have matured title to the entire tract of 200 acres of land.

The cases cited by appellees, Doom v. Taylor, 35 Tex. Civ. App. 251, 79 S. W. 1086, and Gulf Production Co. v. Palmer (Tex. Civ. App.) 230 S. W. 1017, do not sustain their contention that appellees' possession was not under a deed. In neither case was a subvendee in possession claiming the right of redemption.

The sale to Davis presents one of the controlling issues on the theory that appellees did not own the record title to the land. It has already been said that no presumption can be indulged that the common source had any title except under Hogan. By the sheriff's deed to Davis, appellants showed that this title was divested out of the common source, subject to the right of redemption by appellees. Unless they acquired this title by redemption, then appellees did not own the record title. On this issue we agree with their contention that the facts enumerated above—that Davis never claimed the land after its purchase nor rendered it for taxes nor paid taxes thereon; that appellees were in continuous possession for ten or twelve years, claiming the land adversely to Davis under the Eli Rhoden deed—were sufficient to raise the issue in their favor that they redeemed the land from Davis, in the manner required by law. Authorities sustaining this conclusion are cited under the third syllabus of Southwestern Settlement & Development Co. v. Village Mills Co. (Tex. Civ. App.) 230 S. W. 869; and that the court erred in refusing to submit that issue to the jury as per their request. But we cannot agree with them that, on the facts stated, the law conclusively presumed the issue of redemption in their favor.

The facts of this case, without summarizing them, are sufficient to invoke in favor of appellants all the provisions of article 5519a, Vernon's Annotated Texas Civil Statutes, which is as follows:

"In all suits involving the title to land not claimed by the State, if it be shown that those holding the apparent record title thereto have not exercised dominion over such land or have not paid taxes thereon, one or more years during the period of twenty-five years

next preceding the filing of such suit and during such period the opposing parties and those whose estate they own are shown to have openly exercised dominion over and asserted claim to same and have paid taxes thereon annually before becoming delinquent for as many as twenty-five years during such period, such facts shall constitute prima facie proof that the title thereto had passed to such persons so exercising dominion over, claiming and paying taxes thereon."

It seems to be the contention of appellants that, since, as a matter of law, they established all the facts necessary to invoke the provisions of this article of the statute, they thereby matured in themselves an absolute title to the land. We cannot agree to this construction. The statute gives such facts the weight only of "prima facie proof." Prima facie proof is necessarily subject to rebuttal. The construction given by us to this article in Kellogg v. Southwestern Lumber Co., 44 S.W.(2d) 742, denies appellants' contention.

For the errors discussed, the judgment of the lower court is reversed and this cause remanded for a new trial.