## BERNARD RIVER LAND DEVELOPMENT CO. v. SWEENY et al.

### No. 12031.

Court of Civil Appeals of Texas. Galveston.
Dec. 9, 1948.

Rehearing Denied Jan. 13, 1949.

Hugh G. Dunlap, W. J. Howard, and Felix A. Raymer, all of Houston, and T. M. Gupton, of West Columbia, and Rucks & Perry, of Angleton, for appellant.

Williams, Lee & Kennerly, of Houston, Floyd Enlow, of Angleton, and Fountain, Cox & Gaines, Joyce Cox, and John G. Seaman, all of Houston, for appellees.

GRAVES, Justice.

This was a suit in trespass to try title, brought by the appellees, heirs of one Thomas J. Sweeny, as plaintiffs, against the Bernard River Land Development Company, and others not now necessary to name, as defendants, to recover 83 acres of land lying in the west corner of the

Imla Keep League in Brazoria County, Texas.

Judgment in the trial court—following a jury's verdict on special issues submitted—went for such plaintiffs, who are now the active appellees before this Court, and against such Development Company, which alone has appealed from such action below to this Court.

Title to the league of land, in which the 83 acres here involved lay, was shown to have been issued to Imla Keep by the Mexican Government on July 23, 1824.

In inveighing on appeal against the judgment so adverse to it below, appellant presents some eight points of error. The first four of these complain of the court's refusing appellant's separate motions for an instructed verdict and a judgment non obstante veredicto in its favor, upon these distinctive grounds, respectively:

1. That appellees, as plaintiffs below, "after proving common source as between themselves and Bernard River Land Development Company, went further and destroyed the presumption of title, thus raised, by stipulating and proving that the common source had no title whatever";

2. "the uncontroverted facts admitted of no reasonable conclusion other than, that, under the doctrine of presumed grant, appellees, or their predecessors-in-title, had parted with all interest, claim or demand to the lands involved herein";

3. "the tax judgment in Cause No. 26115 in the District Court of Brazoria County, the order of sale and sale thereunder, established in appellant and its predecessors a good title, independent of and superior to any title or claim held by or vested in appellees, or those under whom they hold or claim";

4. "Appellants' motions for instructed verdict and for judgment non obstante veredicto were wrongfully denied, for the reason that, appellees and those under whom they claim are, as a matter of law, grounded upon public policy, estopped from now claiming title to the lands involved herein, because of the execution and filing of the affidavit by Mrs. D. Frances Sweeny (appellees' ancestor and predecessor-in-title) denying ownership of the lands now sued for, as a predicate for establishing her claim of right to pension from the State of Texas."

Points 5 and 6, respectively, complain of the closing argument of appellees' counsel. Mr. Cox, to the jury, and of an alleged individual statement made to it during the jury's deliberation by juror Bill Petteway, as having been materially prejudicial to it.

Through Point 7, it is contended that the court reversibly erred in excluding testimony from appellant's witness, R. D. McDonald, to the effect that he—in originally purchasing the land here involved—had relied upon the late Honorable Clarence Wharton's opinion that the title to such land was good; since such opinion would materially have sustained "the presumption-of-a-grant doctrine, as a matter of law, relied upon by Appellant".

Concluding Point 8 asserts this: "the jury's answers to Special Issues Nos. 3, 4, 5, 6, 7 and 8 were without any evidence to support them, and, in the alternative, were so completely against the great weight and preponderance of the evidence as to be manifestly wrong".

After careful consideration of the extended record, aided by able briefs and oral arguments from both sides, this Court concludes that none of Appellant's stated contentions can be sustained, but that, on the contrary, the trial court rendered the only judgment it could have properly done, under the pleadings and evidence.

This immediate determination of the overall result of so extended and complicated a controversy has been made possible, by the admirable reduction by the litigants in their briefs of their differences over both the structural and procedural questions of law involved to the lowest common denominator thereof.

From these it is made clear that both parties claimed the 83-acre tract involved down and under John Sweeny, Sr., and Nancy, his wife, who owned and occupied the John Sweeny plantation from some time about 1830 until their respective deaths, which occurred prior to December

1st of 1855. Among other children, their son, Thomas J. Sweeny, whose wife was D. Frances Sweeny, and their daughter, Sophia Sweeny, whose husband was John McGrew, by inheritance and purchase acquired from their parents all of such John Sweeny plantation, containing about 1100 acres, partly in the Keep and partly in the adjoining Junior Breen surveys, in the respective proportions of about 3/5 to Thomas Sweeny and about 2/5 to Sophia Sweeny, in undivided portions.

Up to the point stated, there seems to be no material dispute between the parties to this appeal; further, none as to the evident fact that both sides (appellant having acquired Sophia Sweeny McGrew's interest, and the appellees being all the heirs of Thomas J. Sweeny), claim under such original John Sweeny, Sr., in that the titles of them both rest upon John Sweeny's title to such plantation tract that was so left to their children by himself and his wife when they died; that plantation is shown to have been composed of two 1/8 leagues—one each in the adjoining Breen and Keep surveys—aggregating about 1100 acres.

Then, with the title to the whole of the John Sweeny, Sr., plantation having become thus vested in his two children, Thomas J. Sweeny and Sophia Sweeny, in the undivided interests indicated, there began inter sese between those two in their partitioning of such undivided interests between them, the transactions out of which this suit directly stemmed—notably, those of 1855 and 1856. This much of its background leads directly to appellant's position under its quoted first point of error, by which it contends that—to use their own language—"plaintiffs below (appellees here), upon whom rested the full burden of establishing their title, failed to connect themselves with the Sovereignty of the soil, or to show any title in themselves or their predecessors, and, for all practical intents and purposes, stipulated themselves out of Court."

The stipulation was this:

"It is stipulated that if the County Clerk of Brazoria County, Texas, who is the custodian of the deed records and conveyances, were present, he would testify as follows: That John Sweeny, Sr., does not of record connect his title with Imla Keep or the sovereignty of the soil.

"It is also stipulated that, prior to the adoption of the common law by the Republic of Texas in 1840, sales of real estate could be evidenced by parol agreements, and that is to say without writing."

■ Without extended discussion of it, this assignment is overruled, upon the holding that, under the attending facts, it cannot be given the effect of stipulating appellees out of court; on the contrary, it is plainly made to appear that neither appellant nor appellees at any time conceded that the title of John Sweeny, Sr., to his plantation was not in him; indeed, this stipulation—upon its face—recites only that the County Clerk would have testified that John Sweeny did not of record connect his title with Imla Keep, or the sovereignty of the soil, not that the appellees admitted or asserted that in fact he never had such title; contrarily, by both their pleadings, and throughout their proof, they insisted that John Sweeny did hold such title, and that both appellant and they themselves claimed down under it;

Further, the quoted stipulation clearly had reference to a matter of procedural convenience, and not to a giving up by the appellees of the very case they had declared upon—that is, of having inherited a good title to the 83 acres down under both John Sweeny, Sr., and his son, Thomas J. Sweeny, and in doing so, they neither claimed nor undertook to prove a title back of John Sweeny to the sovereignty of the soil—having introduced the patent to the Keep league merely as the basis for a necessary description of the land they were suing for.

So that, they thus rested their whole case upon (1) the proof of the land's location, (2) that they acquired the specific 83 acres under the 1858 deed of partition of the John Sweeny plantation from Sophia Sweeny McGrew and her husband to themselves, and (3) that appellant itself

claimed under the McGrews and by the alleged lost deed, or other transactions, under the appellees themselves, as well as further by limitation.

■ In this state of the record, it is held that appellant was bound to the validity of appellees' record title to the land, by the doctrine of common source, and the legal estoppels to claim otherwise it entails. Campbell v. McLoughlin, Tex.Civ. App., 270 S.W. 257; Campbell v. McLaughlin, Tex.Com.App., 280 S.W. 189, 190; Carter & Bro. v. Rhoden, Tex.Civ. App., 72 S.W.2d 620; Corzine's Heirs v. Williams, 85 Tex. 499, 22 S.W. 399; De La Vega v. League, 64 Tex. 205; Ellis v. Lewis, Tex.Civ.App., 81 S.W. 1034; Federal Land Bank v. Brooks, 135 Tex. 370, 143 S.W.2d 928; Glover v. Thomas, 75 Tex. 506, 12 S.W. 684; House v. Reavis, 89 Tex. 626, 35 S.W. 1063; Howard v. Masterson, 77 Tex. 41, 13 S.W. 635; Huth v. Heermann, 5 Tex.Civ.App. 655, 24 S. W. 664; Joyner v. Christian, 131 Tex. 274, 279, 113 S.W.2d 1229; Kelley v. Neal, Tex.Civ.App., 111 S.W.2d 1122; McBride v. Loomis, Tex.Com.App., 212 S.W. 480, 481, 482; Millican v. McNeil, 102 Tex. 189, 114 S.W. 106, 21 L.R.A.,N.S., 60, 132 Am. St.Rep. 863, 20 Ann.Cas. 74; Moran v. Stanolind Oil & Gas Co., Tex.Civ.App., 127 S.W.2d 1012; Rice v. St. Louis, A. & T. R. Co., 87 Tex. 90, 26 S.W. 1047, 47 Am.St.Rep. 72; Roberts v. Blount, Tex. Civ.App., 120 S.W. 933; Saxton v. Corbett, Tex.Civ.App., 122 S.W. 75; Waco Bridge Co. v. City of Waco, 85 Tex. 320, 20 S.W. 137; Rule 798, Texas Rules of Civil Procedure; Article 7382, R.C.S. Texas; 12 C.J.S., Brokers, § 86, page 195; 41 Tex.Jur., p. 520, pp. 509, 510.

■ It follows under the authorities thus cited, it is thought, that appellant's second claim of a presumed grant of title to it from appellees, or their predecessors in title, cannot prevail. One complete answer to this assignment is that, as indicated supra, every issue on such a presumed grant as appellant declared upon and requested of the court, was submitted to the jury, in the series of inquiries given by the court as its special

issues Nos. 3 to 8, inclusive, and that the verdict thereon—returned in categorical findings by the jury—was adverse to the appellant's every contention on this feature.

■ It is true that appellant, under its concluding point of error, quoted supra, contends here that there was no evidence to sustain any of such findings, or if any, that each of such findings was so against the overwhelming weight of the evidence as to make them all wrong; but, after reviewing the statement of facts, this Court cannot agree; to the contrary, it finds that as the trial court charged, the jury made each and all of its negative findings upon this defense from sufficient evidence. It would be supererogatory to undertake here to review that vast testimony, it having been greatly extended to hundreds of pages, as the statement of facts reflects.

Moreover, to say the least of it, there is no such preponderance against any one of the findings as would justify this Court in exercising its exclusive prerogative of reversing the judgment on that account. This holding finds support in these authorities: Bibb v. Underwood, Tex.Civ.App., 38 S.W.2d 384; Bounds v. Little, 75 Tex. 316, 12 S.W. 1109; Bruni v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81; Chace v. Gregg, 88 Tex. 552, 32 S.W. 520; Duke v. Houston Oil Co., Tex.Civ.App., 128 S.W.2d 480; Fowler v. Texas Exploration Co., Tex.Civ.App., 290 S.W. 818; Frugia v. Trueheart, 48 Tex.Civ.App. 513, 106 S.W. 736 742; Harrison v. Craddock, Tex. Civ.App., 178 S.W.2d 296; Havard v. Smith, Tex.Civ.App., 13 S.W.2d 743; Houston Oil Co. v. Kirkindall, 136 Tex. 103, 109, 145 S.W.2d 1074; Love v. Eastham, 137 Tex. 462, 154 S.W.2d 623; McDonald v. McDonald, Tex.Civ.App., 143 S.W.2d 142; Wixom v. Bowers, Tex.Civ. App., 152 S.W.2d 896.

■ As concerns the third point, that the tax judgment in Cause #26115 in the District Court of Brazoria County, styled the State of Texas v. Bernard River Land Development Company, established title in appellant and its predecessors, independ-

ent of and superior to any claim thereto by the appellees, the record in that proceeding indisputably shows that such tax suit was only against this appellant, none of the appellees having been made parties thereto. Such judgment is held not to have bound them, but, on the contrary, to have been void as to them. American Realty Corp. v. Tinkler, Tex.Civ.App., 107 S.W.2d 627; State Mortgage Corp. v. Affleck, Tex. Com.App., 51 S.W.2d 274; State Mortgage Corp. v. Traylor, 120 Tex. 148, 36 S.W.2d 440.

■ Appellant's insistence, under its Point 4, that appellees should be conclusively held to have no right or title in the land involved, because Mrs. D. Frances Sweeny, in her application for a pension from the State of Texas, represented that she did not own it, and that, through public policy, appellees should be deprived of their title to such land as her heirs and it turned over to appellant, is thought to be unsound.

It appears that such statement was not made to the appellant, or to anyone under whom it claims, or even that it ever relied thereon; and further, that such statement had been buried in the archives of the pension department for years. Furthermore, the appellant itself, not having been shown to have known of nor to have been influenced by the recitals of such an affidavit, cannot, at this belated time, in a wholly disassociated proceeding under the strict requirements of an action of trespass to try title between the litigants to it, none of whom, on either side, were ever parties to such a pension-proceeding or shown to have ever known thereof, take advantage of any possible estoppel that might obtain as between the parties thereto. In other words, such a potential claim was, as affects this litigation, res inter alios acta alteri nocere non debet. Fowler v. Texas Exploration Co., Tex.Civ.App., 290 S.W. 818, w. r.

■ Appellant's declarations of improper conduct, under its points 5 and 6, do not, in this Court's opinion, after a review of the record presented under each, disclose any such denial of the rights of the appellant on either count as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in this case, as against the requirements of Rule 434, Texas Rules Civil Procedure.

Indeed, when the setting and the privileges of an opposing counsel in such a situation are regarded, it is not thought that the complained of argument by Mr. Cox was improper.

■ To say nothing of the very general way in which appellant couched its complaint against it, to-wit:

"So inflammatory, so replete with invective and abuse of R. D. MacDonald * * * when there was no evidence to support same"

"And contains so many statements which were without support in the evidence, * * *" (Rules 320, 321, 322, and 374, Texas Rules Civil Procedure; Collins v. Smith, 142 Tex. 36, at page 39, 175 S.W. 2d 407; Texas Indemnity Ins. Co. v. Warner, Tex.Civ.App., 159 S.W.2d 173; Traders & General Ins. Co. v. May, Tex.Civ. App., 168 S.W.2d 267), the argument was attacked as a whole; whereas, when so looked at here, it appears to have been directed to the issues before the jury, and to have been based upon the record and reasonably responsive to the challenges made by the appellant. Walker v. Money, Tex.Civ.App., 93 S.W.2d 602, Id., 132 Tex. 132, 120 S.W.2d 428; Davis v. Hill, Tex. Com.App., 298 S.W. 526; Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054; Piedmont Fire Ins. Co. v. Dunlap, Tex. Civ.App., 212 S.W.2d 996. See also Ligon v. Green, Tex.Civ.App., 206 S.W.2d 629, as to jury misconduct.

The substance of appellant's main complaint of jury misconduct is this:

"The juror witness, A. C. Runnels, testified positively that the juror Bill Petteway, during the deliberations in the jury room, made the statement that MacDonald (president and majority stockholder of the appellant company) had enough without taking land from a poor widow woman. The witness further testified that, after making such statement, the juror Petteway took no further part in the discussion of the evidence."

In the first place, it seems that the overwhelming majority of the jury, that is, 9 of them, testified that they had not heard any such remark as having been made, and, in the second place, since it is alleged to have been made about money matters rather than any questions of title to the land, it was not shown to have been harmful. Accordingly, it ought not to be held to entail a reversal of this judgment, because, after considering the record upon it as a whole, this Court cannot see that

Finally, under the same authority, Rule 434, it is held that the rejection of testimony proffered by the appellant upon this trial as to verbal advice received by Mr. McDonald from his attorney to the effect that its title to the land he was buying was good, was neither error, nor shown to have been harmful.

The appended sketch of the area involved, taken from the brief for the appellees, is thought to throw some light upon the locations of the different tracts.

its injection into the feeling and agitation shown to have been rehearsed by both sides before the jury during the trial, could have probably caused the rendition of an improper judgment against the appellant.

Further discussion is deemed unnecessary, since these conclusions require an affirmance of the trial court's judgment. It will be so ordered.

Affirmed.