## HARRISON v. CRADDOCK et al.
### No. 11589.

Court of Civil Appeals of Texas.   Galveston.
Feb. 3, 1944.

Walter F. Brown, of Houston, for appellant.

Jno. T. Buckley, of Houston, for appellees.

CODY, Justice.

This controversy is over the title to a forty-acre tract of land in Galveston County. According to the terms of a general warranty deed, dated October 2, 1937, J. W. Craddock, conveyed the forty acres to appellant. Thereafter, before the deed was manually delivered to appellant, and before appellant paid the consideration therefor, on October 22, 1937, the grantor, J. W. Craddock, died testate. The appellees, who are claiming title to the forty acres in opposition to appellant, claim title under J. W. Craddock's will.

Appellees went to trial on their Fifth Amended Original Petition, which contained three counts. The first count is a declaration upon a formal action in trespass to try title. In their second count appellees allege that J. W. Craddock died October 22, 1937, and that by his will he left all his property to his three children, W. A. Craddock, Ruth Craddock Holekamp, and C. E. Craddock. That C. E. Craddock died intestate on August 13, 1942, leaving as his sole remaining heirs the parties to the petition other than W. A. Craddock and Mrs. Holekamp. That Mrs. Holekamp was nominated executrix by the will. That she had the will admitted for probate in the Probate Court of Kendall County, and that J. W. Craddock's estate has been fully administered in accordance with his will, and the executrix duly discharged. That when J. W. Craddock executed and acknowledged the deed to appellant on October 2, 1937, he lacked mental ability to appreciate his property rights and to understand the consequence of his acts. And in connection with the second count of their petition appellees allege they are desirous of tendering into court the consideration paid by appellant to Mrs. Holekamp, and pray for the cancellation of the deed. By the third count of their petition appellees allege that on October 2, 1937, J. W. Craddock attempted to execute and deliver to one Burns a warranty deed naming appellant as grantee therein, when, as, and if the said grantee should pay to the said grantor, J. W. Craddock, during his lifetime, the net consideration of $1000 therefor. That said deed was not delivered to appellant by the said Burns, nor was the consideration there-

for paid by appellant prior to the death of J. W. Craddock, which occurred October 22, 1937. That on June 28, 1938, which was at a time title to the land was vested in appellees and when the deed was void, it was delivered to appellant against the wishes of appellees. In this count it is not alleged that J. W. Craddock was wanting in mental capacity. A tender of the $1000, however, is alleged. Cancellation of the deed, which appellant had recorded, as casting clouds on appellees' title is prayed for.

Appellant went to trial on his First Amended Answer. He pled "not guilty"; a general denial; and the four year statute of limitations to so much of appellees' suit as sought a cancellation of the deed. By way of special answer appellant pled: That appellees are estopped to assert a suit for cancellation of the deed, and upon these grounds: That on September 30, 1937, appellant and J. W. Craddock entered into a written contract under which appellant was to purchase the land in question for a consideration of $1200. That said Craddock was acting through his agent Burns. That thereafter, on October 2, 1937, the said Craddock ratified said contract, and prepared and forwarded to his agent, Burns, the deed of conveyance to appellant, to be held by Burns until appellant performed his part of the contract, appellant having paid $25 on the earnest money receipt, pending examination of title. That after J. W. Craddock's death, his daughter, Mrs. Holekamp, qualified as executrix, and, with full knowledge of all facts, elected to treat the deed as escrowed with the said Burns, and the sale of the land as completed in the lifetime of her father. She demanded that appellant pay her the balance of the purchase money, less the commission due Burns, which balance amounted to $1000. That Mrs. Holekamp, as executrix, caused the deed to be released to appellant, and collected the purchase price thereof. That she used the same as funds of the estate of J. W. Craddock, and reported same as such, and caused the Probate Court to include the $1000, or what remained of it, in the final distribution or partition of the estate, and caused the Court to decree, as between the distributees, that the purchase money and not the 40 acre tract was a part of her testator's estate at the time of his death. That her brothers acted with the executrix in such actions, and acquiesced therein. That if J. W. Craddock's children had any doubts as to his mental capacity they concealed same from appellant, and participated in inducing appellant to pay the balance of the purchase price, and in treating same as belonging to the estate, and never questioned the decision of the Court so holding it such. That all parties were satisfied with the sale until the value of the land increased as an oil prospect in 1941. That appellees are estopped to seek the cancellation of the deed, and if they ever possessed any such remedy, the same is lost by their laches. By a cross-action against appellees, appellant asked to have their claims to the forty acre tract removed as a cloud upon his title.

The Stanolind Oil & Gas Company acquired from appellant an oil, gas and mineral lease upon the land; and was a party defendant below. But the lease has expired, and said Company is not a party to the appeal, so it is unnecessary here to present its pleadings.

Both appellant and appellees, at the conclusion of the evidence, moved the court to instruct the jury to return a verdict in their favor, respectively. The court, over numerous objections of appellant, submitted the case to the jury upon five special issues, together with explanatory definitions, the substance of which, as answered, are:

1. That J. W. Craddock, on October 2, 1937, when he executed the deed in question, lacked mental capacity to know and understand that he was executing and acknowledging a deed to appellant.

"By the term mental capacity is meant the possession of sufficient mind to understand the nature and effect of his act in executing the deed inquired about."

2. That on September 30, 1937, when D. A. Burns executed the earnest money receipt, J. W. Craddock did not have sufficient mental capacity to enter into said earnest receipt-contract.

3. That Ruth Craddock Holekamp did not delay for an unreasonable length of time the taking of action to set aside the deed of October 2, 1937.

"Unreasonable delay, or delay for an unreasonable time, depends upon all the circumstances. Any delay beyond the time when a person of ordinary prudence under the same or similar circumstances would have taken action is unreasonable."

Special issues submitted with reference to C. E. Craddock and W. A. Craddock the same inquiry made in special issue No. 3, and the jury returned like answers.

Appellant regularly presented a motion for judgment notwithstanding the verdict, which was refused.

Upon the verdict the court rendered judgment for appellees (except the minor heirs of C. E. Craddock).

Appellant here seeks a reversal of the judgment on numerous grounds. He seeks to have judgment here rendered in his favor upon the ground that the court should have granted his motions for an instructed verdict, and for judgment notwithstanding the verdict; but if this is refused, he seeks a remand for a new trial upon numerous alleged errors.

Appellant states in his brief, and appellees do not deny, that the following facts were established by the undisputed evidence:

That J. W. Craddock was seventy-two years old when he executed the deed, and sick. That some two years before the date of the deed he had listed the forty acre tract with the real estate agent Burns, who had represented him in other transactions, for sale. J. W. Craddock resided at the home of his daughter in Kendall County, and Burns resided in Galveston County. That about September 18, 1937, Burns notified him of a prospective sale of the land. Without detailing the correspondence between Burns and J. W. Craddock, some of which had been destroyed after Burns' death (which occurred before this action was filed), the upshot of the matter was that Burns, representing Craddock, executed a contract for the sale of the land with appellant, on September 30, 1937.

That under the contract of sale, appellant was to pay as consideration for the land the sum of $1200. Of this sum $1000 net was to go to Craddock, and $200 to Burns as his commission, but out of which he was to pay the charges of the abstractor. Thereafter, on October 2, 1937, Craddock transmitted to Burns the deed of conveyance to be delivered to appellant when the title was approved and the consideration paid. That the consideration agreed to be paid for the land was its fair and reasonable value at the time of the contract and until activity in oil leasing began sometime in 1940, and that there was available for sale in the same area when appellant purchased the 40 acre tract much other land that appellant could have purchased at the same or a lesser price per acre.

That Mrs. Holekamp (the daughter of J. W. Craddock) learned of the contemplated sale of the land because of the mail or correspondence passing between her father and his agent Burns, and questioned her father about it. She desired that her father not make the sale, but he told her that he might live longer than was thought and that he was about out of money and needed to make the sale. He had her get in touch with his lawyer, and have the deed drawn for his execution. And a notary from the lawyer's office took the acknowledgment. When Craddock died on October 22, 1937, he had in the bank a balance of nineteen dollars and some odd cents.

J. W. Craddock's two sons, who lived at Dallas and in North Carolina, also attended their father's funeral. They and his daughter consulted about the sale at the time. They were opposed to it being completed. By the will of J. W. Craddock, the mineral rights in all the lands which he owned was devised to his three children, share and share alike. But with respect to the 40-acre tract here involved, he had devised the surface rights therein to C. E. Craddock in addition to a third of the mineral rights. It was decided that he should come to Galveston and see about the matter.

At Galveston he (C. E. Craddock) consulted with one of the leading firms of the city. What advice he received was a privileged communication between lawyer and client. Mrs. Holekamp also consulted her lawyer about the matter. Mrs. Holekamp was named as executrix in her father's will. She had the will probated in the Probate Court of Kendall County, qualified as executrix, and fully administered the estate, made her final report which was duly approved, and she and her bondsmen were discharged in the last part of 1938.

Her final report was filed on November 17, 1938, and among other things it showed:

"* * * .

"2. That since your executrix qualified as such the following assets belonging to the Estate of J. W. Craddock, Deceased, has come into her hands.

"Cash ..................... $ 19.39
"Cash from the sale of 40 acres, Block No. 295, in the town of Alta Loma, Galveston County, Texas, which was sold by J. W. Craddock before his death, and the proceeds received after his death (*Land here involved*).. 1000.00

"Cash received from Woodman of the World Insurance Policy ..................... 1221.47

"Total Receipts........... 2240.86."

The report further shows:

"Your Executrix would further show that the real estate mentioned in said will with the exception of 40 acres, Block 295, Alta Loma, Texas, which was sold before the death of J. W. Craddock, Deceased, since there are no debts due and owing by said estate, passes to and vest in fee simple in the beneficiaries named in said will.

"Your Executrix would further show that the 40 acres, which was sold by J. W. Craddock before his death was listed in the inventory as assets of the estate and this was done because of the fact that at the time there was some legal question as to whether or not title had passed to the purchaser and that said legal question was decided that the title had passed to the purchaser before the death of J. W. Craddock, and the $1000.00 cash received by your Executrix is shown in this report as money belonging to J. W. Craddock, at the time of his death."

Proper notice and citation was had on the final report. Upon a hearing thereon the court found the executrix had collected all assets belonging to the estate, and in all respects had properly discharged her duties, and had properly administered said estate, and ordered the distribution of the sum remaining in her hands, amounting to $1199.-04, according to the terms of the will, etc.

Without going into details relating to the question of J. W. Craddock's sanity, there was no evidence that anyone except his children knew of or suspected any lack of mental capacity. And it is not pretended that they at any time ever told anyone that their father lacked mental capacity, or that appellant learned of such contention until after this suit was filed. Indeed he did not know J. W. Craddock personally, having dealt only with his agent, Burns.

The deed was caused to be delivered to appellant's agent, appellant being absent from the country. And one thousand dollars net was paid to and collected by Mrs. Holekamp in her capacity as executrix.

## Opinion.

In order "to validate a deed there must be a delivery with the design of parting with the title to the property, which delivery, in fact or by relation, must take effect in the lifetime of the grantor." Burkey v. Burkey, Mo.Sup., 175 S.W. 623, 624. See also R.C.S. Art. 1288. As there was no manual delivery of the deed in the grantor's lifetime, in order to sustain such delivery as valid, it must be shown that the delivery, when made, related back to the grantor's lifetime.

"Where the grantor executes the deed, and his intention to deliver the same is clear, the title passes to the grantee, irrespective of the fact that the grantor retains control of the deed during his lifetime." Henry v. Phillips, 105 Tex. 459, 151 S.W. 533, 536. The evidence that J. W. Craddock, the grantor, intended that the deed should be delivered with the design of parting with the title was clear and undisputed. Of course, if he was insane, his intention to deliver the deed was voidable, but no one except his children knew that, and they told no one.

It is the settled law of this state that the deed of a grantor of unsound mind is not void, but voidable only. Neill v. Pure Oil Co., Tex.Civ.App., 101 S.W.2d 402, 404, writ refused, and authorities there cited. Since a deed can be effective only when executed by a grantor or under his authority, and when delivered with the intention of parting with the title to the property, the Neill case, and authorities there cited, necessarily have established it as the settled law of this state that the execution and delivery of a deed by a person of unsound mind is not void, but voidable only.

The Neill case further holds: "Such a deed prima facie conveys the title to the land, and, where the recovery of the title necessarily follows the rescission or cancellation of the deed, the action brought thereon is not, strictly speaking, a suit to recover real estate." The case further holds that the four year statute of limitations applied to suits for recission of deeds.

From such holding, and from the fact that an action in trespass to try title does not lie to recover land that has been conveyed by the deed of an insane person, it necessarily follows that such a deed conveys the entire title in the land, equitable and legal. When a court of equity rescinds a voidable deed, it will not relegate the petitioner to seek a legal remedy to recover the land after decreeing the recission, but will do full justice by vesting him with the title to the land.

It is too elementary to require citation of authority that any interest in land, equitable or legal, can be recovered in an action in trespass to try title. So, if relief against a voidable deed must be by a suit to rescind it, and not an action in trespass to try to recover the land conveyed by it, it can only be because such deed conveyed the entire title.

Of course, a grantee doesn't know, when he accepts delivery of his deed from an insane person, that he is dealing with a person that is insane, or he wouldn't deal with him. And, as the only difference between a completely valid deed, and one that is voidable, is that the voidable deed can be set aside, but, unless and until set aside, remains valid, it is only just that the deed should convey him all the title it purports to convey him. Justice to the insane grantor, or his successors in interest, is fully served by affording him or them the remedy of recission to set aside the voidable deed. A remedy in a court of equity is frequently called an equity, as distinguished from an equitable estate, or vested right. The right to set aside a voidable deed is a mere equity. It is a right of action, as distinguished from a vested right in property. When a judgment is obtained rescinding a voidable deed, a vested interest in property is thereby obtained.

What we have said is in anticipation of discussing two contentions urged by appellees. The first of these contentions is that upon the death of J. W. Craddock the title to the forty acres immediately vested in his devisees, subject to the administration upon his estate by the Probate Court. This is not true if the 40-acre tract was conveyed by the deed of October 2, 1937. The fact that the deed was not manually delivered before the grantor's death is not, as we have seen, conclusive on whether or not, when it was manually delivered, such delivery, by relation, took place before the grantor's death.

Though appellees appear to have been reluctant to have the deed delivered, they revealed to no one that they believed their father insane when he executed either the contract of sale or the deed. Indeed, appellant, under one of his points in which he contends reversible error was made, reviews the evidence relating to the question of J. W. Craddock's sanity, and strongly contends that the jury's verdict is contrary to the preponderance of the evidence. But without passing on such point, and assuming in support of the verdict that he was not sane, it is undisputed that appellees, with full knowledge that the deed was voidable, suffered it to be delivered to appellant as being, what it appeared to be, a valid deed. Mrs. Holekamp, as executrix, took appellant's money, and reported the land as having been sold by her father before his death. Her two brothers, though made parties to the hearing on the report, continued their silence, though knowing the sale was voidable, suffered it to be confirmed as a sale made by their father, and suffered the proceeds of the sale to be distributed under the provisions of the will.

If it could be said that J. W. Craddock's intention to deliver the deed and pass the title by his deed was not clear as a matter of law, and under the evidence we think it was, then it was a fact question. And that question of fact was one necessary to be determined before J. W. Craddock's estate could be fully administered, the assets distributed under the will and the administration closed.

As appears from his executrix's final report, if there was ever any doubt on the score of whether J. W. Craddock executed the deed with the intention that the same should be delivered to the grantee, it was removed during the course of administration upon his estate. It was determined in the course of such administration that the testator executed the deed with the intention that it should be delivered, and it was delivered. It was reported that the 40 acre tract was sold during the testator's lifetime. The consideration received therefor was reported as an asset of the estate, and distributed as such.

21 American Jurisprudence, Sections 488 and 490, reads:

"Section 488—Effect of res judicata.—If made in conformity with law, a final decree as to the distribution in an estate is conclusive as to every matter involved and constitutes a bar to further proceedings concerning the same matter not only in court of probate jurisdiction, but in all other courts. It has the force of res judicata both at law and in equity and will not be vacated or annulled by courts of equity except on the establishment of some well recognized ground for equitable relief, thus, a decree of the proper court settling an estate and adjudging to the distributees their respective shares is as conclusive as a decree in chancery or the judg-

ment of a court of law. All the parties are concluded thereby, including sureties on the bond of the accountant."

"Sec. 490—Collateral Attack—The general rule that a judgment or decree of a court of competent jurisdiction cannot be impeached collaterally is applicable to decrees for distribution. Thus, a collateral attack upon the decree will not be allowed except for lack of jurisdiction, such as where notice of application therefor is not given for the time which the statute makes a prerequisite to the making thereof. The decree is also entitled to the same favorable presumptions which are accorded to the judgment of all courts of record. It has been held that the concealment of facts does not affect the running of limitations against the right to attack the distribution of a decedent's estate."

As has been pointed out above, since the deed was voidable only, when it was delivered, the delivery related back to the grantor's lifetime, and the full title to the land passed to appellant thereunder. Even had there been no administration on the grantor's estate, there would be a most serious question of whether appellees would not be estopped to bring suit to rescind the deed. They, and they alone, knew that the grantor was insane, and that the deed was voidable. Yet they suffered appellant to pay to the estate, which was in effect to their account, the stipulated consideration, without notifying of the facts which rendered the deed voidable.

Furthermore the undisputed facts established that appellees never notified appellant that the deed was voidable, or sought to set the same aside until after the land had greatly increased in value. By keeping silent, they induced appellant to pay Burns his commission on the sale, for which the estate would have been liable if J. W. Craddock was sane, had the sale not gone through. On the then value of the land, the item of $200 was a matter to be considered. And whether the insanity of the grantor could be established by the preponderance of the evidence to the satisfaction of the jury, was certainly not free from doubt. Even now they have not tendered back to appellant the item of $200, which was a part of the consideration he parted with.

But without further elaboration, it is clear that by reason of the proceedings of the Probate Court, the deed, whether orig-

inally voidable, was confirmed as valid and binding upon the legatees of J. W. Craddock. As appellees base their rights upon his will, the court should have instructed a verdict in appellant's favor. And failing to do this, the court should have rendered judgment for appellant on the suit by appellees against him, and in his favor against appellees on his cross-action to remove cloud from title.

The judgment should be reversed and rendered, and it is so ordered.

Reversed and rendered.